IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL SANDOVAL, ET AL,<br><br>Plaintiff,<br><br>v.<br><br>SYED ALI, ET AL,<br><br>Defendant. | No. C -13-03230(EDL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANTS' MOTION TO STRIKE** |

Plaintiffs Rafael Sandoval and Luis Calixto allege, on behalf of themselves and a putative class, that Defendants failed to comply with the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216, California labor law, and California unfair competition law. Defendants move to dismiss Plaintiffs' First Amended Complaint with prejudice, to strike Plaintiffs' class allegations, and to disqualify Plaintiffs' counsel. The Court dismisses with leave to amend Plaintiffs' FLSA claim against all Defendants except Autowest, M1 Collision Care Centers, Inc., Bobby Ali, and Rick Ali. The Court further dismisses with leave to amend Plaintiffs' state law claims against all Defendants except Autowest and M1 Collision Care Centers, Inc. The Court strikes Plaintiffs' class allegations with leave to amend and strikes the word "damages" from Plaintiffs' unfair competition claim without leave to amend. The Court declines to disqualify Plaintiffs' counsel at this stage of the proceedings on the present record.

Plaintiffs are to file any amended pleading no later than April 18, 2014. The Court will hold a further case management conference on May 23, 2014 at 10:00 a.m., 450 Golden Gate Ave., Courtroom E, 15th Floor, San Francisco, California. The parties' joint case management statement is due May 16, 2014.

**I.     Background**

  A.     <u>Superior Court Case</u>

  Plaintiffs' case is related to a pending superior court case brought by Martin Juarez and Adrian Ramirez against some of the same Defendants as here. Juarez and Ramirez are represented in the superior court case by the same counsel as Plaintiffs here and Juarez and Ramirez have opted in under the FLSA in this case.

  In 2008, Juarez filed a wage and hour class action in the Superior Court for Santa Clara County against Syed Ali and MB Bodyshop of San Francisco, Inc.: <u>Juarez v. Ali</u>, Case No. 1-08-CV-121859 (Sup. Ct. Santa Clara Cnty) (the "superior court case" or <u>Juarez</u>). (Request for Judicial Notice ("RJN") Ex. A.)[1] Later, Ramirez joined Juarez as a superior court plaintiff. Juarez alleged that he worked for MB Bodyshop San Francisco, which was the San Francisco location of Autovest Collision Repairs, Inc. dba Autowest Collision Repairs, Inc. ("Autowest"). He also alleged that Syed Ali owned and controlled a number of entities, including MB Bodyshop of San Francisco, Collision Service Center of Oakland, San Jose Autowest Collision, Fremont Collision Care Center, Concord Collision Care Center, Sunnyvale Collision Care Center, and Serramonte Auto Plaza Body Shop. He alleged claims for: (1) not paying wages when due; (2) not paying minimum and overtime wages; (3) not complying with rest and meal period requirements; and (4) not complying with record-keeping wage statement, and payment deadline provisions of California law. (RJN Ex. A ¶ 1.) He defined the class as "[a]ll non-exempt bodyshop employees who are employed or have been employed by Defendants in California within four (4) years of the filing of this Complaint through the date of final disposition of this action." (RJN Ex. A ¶ 15.)

---

[1] Defendants request that the Court take judicial notice of the complaint in the superior court case, the order denying class certification in the superior court case, the FAC in the federal case, the Calixto declaration in the superior court case, the Sandoval Declaration in the superior court case, and printouts of corporate records for various entities from the California Secretary of State's and San Mateo County Assessor's websites. (Dkt. 27; 35.) Plaintiffs do not oppose Defendants' request for judicial notice. A court may take judicial notice of undisputed matters of public record, including documents on file in state court, <u>Harris v. Cnty. of Orange</u>, 682 F.3d 1126, 1132 (9th Cir. 2012), and "a court may take judicial notice of information posted on government websites," <u>Sears v. Cnty. of Monterey</u>, Case No. 11-1876 LHK, 2013 U.S. Dist. LEXIS 120401, at *12 (N.D. Cal. Aug. 22, 2013). The Court therefore takes judicial notice of Exhibits A-J to Defendants' requests for judicial notice.

In the early part of 2012, Juarez moved for class certification of a slightly narrower class limited to those who worked on a "piece rate basis." (RJN Ex. B at 3.) In support of the motion, Rafael Sandoval and Luis Calixto, Plaintiffs in the pending federal case, submitted declarations in superior court as potential class members. (RJN Ex. D, E.) Plaintiff Calixto stated that he worked for Autowest in San Jose from 2004 to 2011. (RJN Ex. D ¶ 10.) Plaintiff Sandoval stated that he worked at Autowest Collision Repairs, Inc. in San Jose and later in Concord at Concord Collision Care Center. (RJN Ex. E ¶ 10 and attached pay stubs).

On April 23, 2012, the superior court denied the motion for class certification without prejudice. (RJN Ex. B.) The superior court noted that "Defendants raise a valid point that without evidence of alter ego liability between the non-party corporate entities and Ali, [Juarez] lacks standing to sue on behalf of employees of shops other than the location at which he worked. . . . "[I]f Plaintiff only has standing to sue his own employer, then it cannot be said that Defendants' liability will be determined from facts and legal findings common to all members of the class." (RJN Ex. B at 5.) The superior court further found that defendant Ali was not the alter ego of any of the corporations or vice versa, as they maintained separate statuses and assets and observed corporate formalities. (Id. at 8.) Commonality was also lacking because the evidence showed that different Autowest locations had different policies regarding paying employees. The superior court also concluded that the standing/alter ego issue defeated typicality: "Plaintiff's claims are not typical of the rest of the class because he has no relationship to any entity other than MB Bodyshop." (Id. at 9.)

After the denial of class certification, the superior court case proceeded on Juarez's and Ramirez's individual claims and a claim under the California Private Attorneys General Act ("PAGA"), California Labor Code section 2699, on behalf of themselves and other current or former employees of MB Body Shop of San Francisco, Inc. Summary judgment issued on August 5, 2013, as to the fourth claim for failure to provide meal periods. (Defs.' 3/6/14 Supp. Ltr., Dkt. 46.) Trial commenced later in August 2013. After the plaintiffs rested their case, the superior court granted judgment to the defendants as to the claims for failure to provide paid rest breaks, failure to provide itemized wage statements, and unfair competition. (Id.) In November 2013, the superior court

3

plaintiffs moved to vacate the judgment as to the claim for failure to provide rest breaks. (Id.) The superior court heard argument on the motion on January 10, 2014, and heard closing arguments on February 14, 2014. (Id.) The superior court has not issued a judgment yet as to any claims. Defendants anticipate that the superior court will issue a ruling on the motion to vacate judgment and the other outstanding issues within sixty days of February 14, 2014. (Id.)

B.     Federal Case

On July 12, 2013, Plaintiffs Sandoval and Calixto, represented by the same counsel who represented the superior court plaintiffs, filed a complaint against Defendants Syed Ali, Bobby A. Ali, Rick Ali, M1 Auto Collisions Centers, and M1 Collision Care Centers, Inc. On September 5, 2013, prior to serving the complaint, Plaintiffs filed a First Amended Complaint ("FAC") naming as additional defendants Autovest Collision Repairs, Inc. aka Autowest Collision Repairs, Inc., MB Body Shop of San Francisco, Inc., and Serramonte Auto Plaza Body Shop. The FAC is very similar to the complaint in the superior court case. According to Plaintiffs, the individual Ali Defendants own and/or control the other defendants, which are auto body repair shops. Plaintiffs allege that the Ali Defendants are jointly and severally liable as "employers" for purposes of the Fair Labor Standards Act, and are jointly and severally liable as the "common law employer of the putative class," and as alter egos of the corporate defendants for purposes of the state law claims. (FAC ¶ 9.)

Plaintiffs allege that they were employed by Defendants to work in Defendants' automobile facilities on repairs for body and paint work. (FAC ¶ 7.) Plaintiffs bring claims for: (1) failure to pay overtime wages and minimum wages under the Fair Labor Standards Act; (2) failure to pay state minimum wages in violation of the California Labor Code; (3) failure to pay state overtime wages in violation of the California Labor Code; (4) failure to provide rest periods or compensation in lieu thereof in violation of the California Labor Code; (5) failure to pay timely wages after termination or resignation in violation of the California Labor Code; (6) failure to provide itemized employee wage statement provisions in violation of the California Labor Code; (7) unlawful kickback payments in violation of the California Labor Code; and (8) violations of California unfair competition law. Plaintiffs seek compensatory damages, restitution, civil penalties, injunctive relief, declaratory relief, and attorneys' fees. (FAC, Prayer.) With a few exceptions, these claims are the same as

4

those in the superior court Case. (RJN Ex. A.) Plaintiffs' proposed class is:

> All non-exempt bodyshop employees who are employed or have been employed by Defendants in California within four (4) years of the filing of this Complaint plus any tolling from any State court class actions filed through the date of final disposition of this action.

(FAC ¶ 16.)

Plaintiffs' opposition to Defendants' motions explained that they seek to represent a class of "piece rate" workers who were paid by the task they performed rather than the hours they spent working. The putative class members were compensated based on a "flag" hour, which is an estimate of the amount of time a particular job takes. For example, if Defendants' software estimated that an auto repair job would take five hours, an employee's compensation would be based on five hours, regardless of how long the job actually took. Plaintiffs state that such a "piece rate system" can be lawful but allege that it was unlawful as implemented here because the putative class members were not paid an overtime premium above the piece rate, were not paid a separate hourly rate for work that did not contribute to the piece rate earnings, were not compensated for paid rest breaks, and had their flag hours lowered by Defendants, i.e., a customer would be billed for twelve estimated hours but the employee compensated based on ten estimated hours. (Pls.' Opp. Mot. Dismiss at 3; RJN Ex. D, E.)

After Plaintiffs filed the FAC, six additional individuals filed opt-in consent notices under the FLSA. These individuals consented "to be a plaintiff in the above stated action under the Fair Labor Standards Act." (E.g., Dkt. 17.) On January 8, 2014, Defendants moved to dismiss the FAC and to strike the class allegations. After these motions were fully briefed, three additional individuals opted in, including Martin Juarez and Adrian Ramirez, the plaintiffs in the superior court case.

The Court held a hearing on Defendants' motions to dismiss and strike on February 25, 2014. The Court dismissed Defendant Syed Ali without prejudice due to lack of timely service and ordered the parties to update the Court regarding the status of the superior court case and submit further briefing regarding whether Plaintiffs' counsel should be disqualified. The parties filed additional briefing, and Defendants filed an update on the superior court case, on March 6, 2014.

**III.    Discussion**

5

A. <u>Motion to Dismiss</u>

    1. *Standing*

Defendants move to dismiss the entire FAC under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on the ground that Plaintiffs lack standing to sue. Defendants argue that Plaintiffs lack standing to pursue claims against all Defendants because it is undisputed that Plaintiffs worked only for one or two of the Defendants, and Plaintiffs' alter ego allegations are insufficient. Under California law, "a class action may only be maintained against defendants as to whom the class representative has a cause of action." <u>Baltimore Football Club Inc., v. Sup. Ct. of Sacramento Cnty</u>, 171 Cal. App. 3d 352, 359 (Cal. Ct. App. 1985). "[T]his prerequisite is also absent when the class representative's cause of action, although similar to those of other members, is only against a defendant as to whom the other class members have no cause of action." <u>Id</u>. Although Defendants describe this as a rule of "standing," the court in <u>Baltimore Football</u> characterized it as part of the typicality inquiry. Other courts, however, have described the rule in terms of standing: "in short, a predicate to a plaintiff's right to represent a class is his eligibility to sue in his own right; what he may not achieve himself, he may not accomplish as a representative of a class." <u>Petherbridge v. Altadena Fed. Sav. & Loan Ass'n</u>, 37 Cal. App. 3d 193, 201-02 (Cal. Ct. App. 1974) (citing <u>Kaffman v. Dreyfus Fund, Inc.</u>, 434 F.2d 727 (3d Cir. 1970)).

It is undisputed that Plaintiffs worked for Defendant Autowest. (Mot Dismiss at 5; Pls.' Opp. at 6; Defs.' Reply Dismiss at 3; RJN Ex. D, E.) Moreover, Plaintiff Sandoval declared in the superior court case that he was transferred to the Concord body shop and paid by Concord Collision Care Center for his work there. (RJN Ex. E ¶ 10.) Plaintiffs assert that the Concord body shop is owned by Defendant M1 Collision Care Centers, Inc. Although Defendants assert that there is no record of Plaintiff Sandoval's employment with M1 Collision Care Centers, Defendants acknowledge that Plaintiffs might have standing with respect to that Defendant. (Defs.' Reply Dismiss at 3 ("The Plaintiffs lack standing to sue any corporate entity other than Autovest, and possibly M1 Collision Care Centers, Inc.).) Plaintiffs have thus adequately alleged standing to bring a FLSA claim and state law claims against Defendants Autowest and M1 Collision Care Centers, Inc.

6

Plaintiffs argue that they also have standing to bring an FLSA claim against the individual Ali Defendants because they have adequately alleged that these Defendants are "employers" under the FLSA. Defendants do not address this argument. The FLSA defines employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "Employer" under the FLSA is not limited to the common law concept of employer but is given an expansive definition. Boucher v. Shaw, 572 F.3d 1087, 1090-91 (9th Cir. 2009). "Where an individual exercises 'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship, that individual is an employer within the meaning of the Act, and is subject to liability." Id. at 591 (citing Lambert v. Ackerley, 180 F.3d 997, 1012 (9th Cir. 1999)).

Here, Plaintiffs allege that the individual Ali Defendants own and/or control the relevant auto body repair shops. (FAC ¶ 9.) Plaintiffs further allege that the individual Ali Defendants controlled Plaintiffs' work environment and the policy decisions that led to the wage and hour violations. (FAC ¶ 9b.) Although these allegations are somewhat conclusory, Defendants do not argue that Plaintiffs are not employers under the FLSA's broad definition. Therefore, Plaintiffs have adequately alleged standing to bring an FLSA claim against Defendants Autowest, M1 Collision Care Centers, Inc., Bobby Ali, and Rick Ali, but not against the remaining Defendants.

As to the state law claims, it is undisputed that Plaintiffs have standing with respect to Autowest and M1 Collision Care Centers because they alleged that they worked for those entities. Plaintiffs have not, however, adequately alleged standing to assert the state law claims as to the individual Ali Defendants or the remaining corporate Defendants. Plaintiffs argue that they may sue the Ali Defendants and other corporate Defendants as alter egos of Autowest and M1 Collision Care Centers. The equitable alter ego doctrine governs whether two separate entities may be treated as the same entity. See RRX Indus., Inc. v. Lab-Con, Inc., 772 F.2d 543, 545-46 (9th Cir. 1985). It applies where "(1) such a unity of interest and ownership exists that the personalities of the corporation and individual are no longer separate, and (2) an inequitable result will follow if the acts are treated as those of the corporation alone." Id. (citing Automotriz del Golfo de California S.A. de C.V. v. Resnick, 47 Cal. 2d 792, 796 (Cal. 1957)). In assessing alter ego, courts consider the

7

commingling of funds and other assets of the entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership of the entities, use of the same offices and employees, use of one as a mere shell or conduit for the affairs of the other, inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers. Sonora Diamond Corp. v. superior Court, 83 Cal. App. 4th 523, 538-39 (Cal. Ct. App. 2000). Common ownership alone is insufficient to disregard the corporate form.

Plaintiffs allege "on information and belief" that the individual Ali Defendants are the alter egos of the corporate defendants, which Plaintiffs collectively refer to as the "the Autowest Collision Group" and that the corporate Defendants are underfunded, are not stand alone corporations, have common management and pay practices, share labor and materials, including a distribution and billing system, and operate a common marketing system. (FAC ¶ 9c.) Plaintiffs further allege that "there exists a unity of interests and ownership [such] that the separate personalities of the corporations and the Autowest Collision Group Employers [the individual Ali Defendants] no longer exist," and that "an inequity would result if the corporations are not viewed as alter egos of each other and the" individual Ali Defendants, "including the inability on the part of the Corporate Defendants to satisfy a potential judgment in this case which seeks wages and derivative penalties." (Id.)

Plaintiffs' alter ego allegations are too conclusory to survive a motion to dismiss. "Conclusory allegations of 'alter ego' status are insufficient to state a claim. Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts supporting each." Neilson v. Union Bank of Cal., N.A., 290 F. Supp. 2d 1101, 1116 (C.D. Cal. 2003). Not only are Plaintiffs' allegations "on information and belief" about a unity of interest between all Defendants conclusory, but Plaintiffs have also not adequately alleged that inequity would result from respecting the corporate form of Defendants. Plaintiffs state conclusorily that "an inequity would result if the corporations were not viewed as alter egos of each other and the [individual Ali Defendants], including the inability on the part of the Corporate Defendants to satisfy a potential judgment in this case which seeks wages and derivative penalties." (FAC ¶ 9d.) California courts have rejected,

8

however, "the view that the potential difficulty a plaintiff faces collecting a judgment is an inequitable result that warrants application of the alter ego doctrine." Neilson, 290 F. Supp. 2d 1101 at 1117; see also Sonora Diamond Corp. v. Sup. Ct., 83 Cal. App. 4th 523, 539 (Cal. Ct. App. 2000) ("The alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form. Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard.").

Plaintiffs have also not adequately alleged that they have standing to sue the individual Ali Defendants or other corporate Defendants other than Autowest and M1 Collision Care Centers under a common law employer theory. Plaintiffs assert that under California law, an individual may be a joint employer if he engages another to work, controls employee working conditions, or knowingly permits the person to work without proper compensation while having the power to prevent such work. However, not only do Plaintiffs not allege facts showing that the individual Ali Defendants acted as joint employers so defined, but the case cited by Plaintiffs refers not to a common law definition of "employer" but rather a specific definition of "employer" under certain California regulations. Martinez v. Combs, 49 Cal. 4th 35, 68 (Cal. 2010). Plaintiffs cite Nationwide Mutual Insurance Co. v. Darden, 503 U.S. 318, 323 (1992) as listing a number of factors federal courts use in determining whether someone is an "employer." This case did not involve the definition of "employer," however, but rather the definition of "employee." Moreover, although Court in Darden set forth a number of factors to be considered in determining whether a person is an employee, Plaintiffs do not allege facts corresponding to these factors.

Finally, although Plaintiffs point out that a number of individuals have filed opt-in notices under the FLSA, these individuals are not parties to Plaintiffs' state law claims and cannot confer standing on Plaintiffs. Moreover, neither the FAC nor the opt-in notices allege which Defendants, if any, employed these individuals. The Court therefore dismisses Plaintiffs' state law claims against all Defendants except Autowest and M1 Collision Care Centers.

        2.     *Claim Preclusion*

Defendants also move to dismiss Plaintiffs claims under Rule 12(b)(6) based on res judicata

9

or claim preclusion. Defendants argue that Plaintiffs' claims are barred because Plaintiffs were "previously part of a class action lawsuit against the same defendants in superior court and are bound by the judgment therein." (Mot Dismiss at 9.) According to Defendants, Plaintiffs were aware of the superior court case because they filed declarations in support of class certification in that case. By not opting out of the superior court case, Defendants argue, Plaintiffs are barred from pursing individual claims, even if those claims assert different legal theories. Plaintiffs counter that there can be no claim preclusion because there is no judgment against the claims of the putative class.

Res judicata or claim preclusion refers to the preclusive effect of a judgment in foreclosing relitigation of claims that were raised or should have been raised in earlier litigation. Frank v. United Airlines, 216 F.3d 845, 850 n.4 (9th Cir. 2000). "For claim preclusion to apply, there must be (1) an identity of claims in the two actions; (2) a final judgment on the merits in the first action; and (3) identity or privity between the parties in the two actions." Frank, 216 F.3d at 850. Here, Defendants have presented no evidence of a final judgment in the superior court case. Although Defendants state in their March 6, 2014, letter that the superior court granted summary judgment on some claims and granted a "motion for judgment" on other claims, Defendants acknowledge that the superior court has not signed a form of judgment. Without such a judgment, there is no claim preclusion.

Further, Defendants have not established that there is identity or privity between the parties in the two actions. Plaintiffs Sandoval and Calixto are not parties to the superior court case. After the superior court denied class certification, the case proceeded on the individual claims of Juarez and Ramirez, as well as a PAGA claim. Because the superior court case was not a class action, Defendants' reliance on cases involving the preclusive effect of class judgments against class members is unhelpful. Defendants have not shown that Plaintiffs were in privity with the superior court plaintiffs. Privity is based on "whether the non-party is sufficiently close to the original case to afford application of the principle of preclusion." People v. Drinkhouse, 4 Cal. App. 3d 931, 937 (Cal Ct. App. 1970). It is also defined as "a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights." Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Ass'n, 60 Cal. App. 4th

10

1053, 1069 (Cal. Ct. App. 1998). "The circumstances must also have been such that the nonparty should be expected to be bound by the prior adjudication." Id. Defendants have not shown that Plaintiffs represent the same legal rights as the plaintiffs in the superior court case. Defendants cite no authority for the proposition, which they do not expressly argue, that because Plaintiffs supported class certification in the superior court case, they are in privity with the superior court plaintiffs even though the court denied class certification. Although it is possible that Plaintiffs could be bound by the superior court's ruling on the PAGA claim, Defendants do not argue that the superior court PAGA claim is the same as any of the claims alleged here. Moreover, the Ninth Circuit recently held that a Rule 23 class action and PAGA action "are more dissimilar than alike" because "[a] PAGA action is at heart a civil enforcement action filed on behalf of and for the benefit of the state, not a claim for class relief." Baumann v. Chase Investment Servs., Case No. 12-55644, slip. op. at 14 (9th Cir. Mar. 13, 2014).

### 3. *Issue Preclusion*

Lack of privity also undermines Defendants' issue preclusion argument. Defendants assert that the superior court ruled on the superior court plaintiffs' claims for failure to comply with California rest period requirements, failure to provide accurate wage statements, and violation of California unfair competition law. These issues correspond to Plaintiffs' fourth, sixth, and eighth claims here. Plaintiffs do not dispute that the superior court found in the defendants' favor on these issues. Issue preclusion, also known as collateral estoppel, requires that: (1) the issue at stake be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated by the party against whom preclusion is asserted; and (3) the earlier determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action. Gospel Missions of Am. v. City of L.A., 328 F.3d 548, 553-54 (9th Cir. 2003). The party asserting preclusion must show with "clarity and certainty what was determined by the prior judgment." Hydranautics v. FilmTec Corp., 204 F.3d 880, 885 (9th Cir. 2000). Moreover, the party against whom claim preclusion is asserted must have been, or be in privity with, a party in the first proceeding. Id.

Defendants have not established that Plaintiffs were parties in the superior court case or in

11

privity with the superior court plaintiffs. Instead, Defendants rely on the unsupported assumption that Plaintiffs were "part of a class action lawsuit," and are thus bound by the superior court's rulings, even though the superior court denied class certification.

                4. *Leave to Amend*

Defendants argue that if this Court dismisses the FAC, it should do so with prejudice because Plaintiffs cannot plead around the admissions they made in the superior court case, cannot correct that they lack standing to sue most of the Defendants, and cannot alter that they already sued their employer in a prior action. According to Defendants, Plaintiffs' counsel cannot in good faith amend the complaint after learning the facts from six years of litigation in superior court.

The Court's dismissal of Plaintiffs' claims against various Defendants is without prejudice. Leave to amend is freely granted under Federal Rule of Civil Procedure 15(a). "This policy is 'to be applied with extreme liberality.'" Eminence Capital, LLC. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). Defendants have not shown that amendment would be futile or that they would be prejudiced by amendment, as this case is in its early stages.

Nevertheless, the allegations in any amended pleading must be made in good faith. The superior court's order denying class certification indicates that the superior court plaintiffs and their counsel (Plaintiffs' counsel here as well) obtained a great deal of discovery relevant to Plaintiffs' alter ego theories. Despite this discovery, Plaintiffs' alter ego allegations in the FAC were made "on information and belief." To the extent that Plaintiffs plead new alter ego allegations in an amended complaint, these allegations must have a factual basis. Further, any amended pleadings should correct Plaintiffs' errors in naming certain Defendants. The parties' briefing and argument evidenced confusion regarding which entities were being sued and which entities should have been sued.

        B.     Motion to Strike

In addition to moving to dismiss the FAC, Defendants move to strike: (1) Plaintiffs' class allegations; and (2) Plaintiffs' reference to "damages" in their claim under the California Unfair Competition Law. Under Rule 12(f), "the court may order stricken from any pleading any

12

insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) is a vehicle by which to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Sidney-Vinstein v. A.H. Robins Co., Inc., 697 F.2d 880, 885 (9th Cir. 1983). Class allegations can be stricken at the pleading stage. Kay v. Wells Fargo & Co. N.A., Case No. 07-1351 WHA, 2007 WL 2141292, at *2 (N.D. Cal. July 24, 2007). Rule 23(d)(1)(D) provides that a court may "require that the pleadings be amended to eliminate allegations abut representation of absent persons."

The Court grants Defendants' motion to strike Plaintiffs' class allegations with leave to amend. Plaintiffs propose the following class: "[a]ll non-exempt bodyshop employees who are employed or have been employed by DEFENDANTS in California within four (4) years of the filing of this Complaint plus any tolling from any superior court class actions filed through the date of final disposition of this action." (FAC ¶ 16.) As Defendants point out, the proposed class is overbroad because it includes as class members employees who are not paid based on the "piece rate system" that is the focus of Plaintiffs' allegations. For example, the proposed class includes employees who are paid by the hour. As pled, the class is inconsistent with Plaintiffs' theory of the case, and the Court therefore strikes the class allegations with leave to amend. The Court need not address at this time Defendants' arguments that Plaintiffs' proposed class does not satisfy Federal Rule of Civil Procedure 23(b).

Defendants also argue that the Court should strike Plaintiffs' reference to damages under the California Unfair Competition Law ("UCL"), California Business & Professions Code section 17200 et seq., because there is no right to recover damages under the UCL. Plaintiffs do not dispute that damages are unavailable under the UCL, but rather point out that unpaid wages are recoverable as restitution under the UCL. Plaintiffs note that the eighth claim of the FAC uses the words "restitutionary remedies," "restitution," "restitutionary disgorgement" in addition to damages, and offer to amend the complaint to substitute the phrase "earned but unpaid wages as an item of restitution or otherwise actionable under the UCL" for "damages."

The Court grants Defendants' request to strike the word "damages" from Plaintiffs' UCL claim. Damages are not available under the UCL, Cacique, Inc. v. Robert Reiser & Co., Inc., 169

13

1 F.3d 619, 624 (9th Cir. 1999), nor does the UCL authorize the disgorgement of all profit a defendant
2 may have earned by withholding overtime wages, Cortez v. Purolator Air filtration Prods. Co., 23
3 Cal. 4th 163, 168 (Cal. 2000).  A plaintiff may, however, recover wages unlawfully withheld as a
4 restitutionary remedy under the UCL.  Id. at 177-78.

       C.      Disqualification of Plaintiffs' Counsel

Although Defendants did not bring a separate motion to disqualify Plaintiffs' counsel, Defendants argue in their motion to dismiss that if the action is permitted to progress, Plaintiffs' counsel should be disqualified due to potential conflicts of interest.  At the hearing, the Court ordered the parties to submit additional briefing on this issue, particularly in light of Judge Alsup's recent ruling in Lou v. Ma Labs., Inc., Case No. 12-5409 WHA, 2014 U.S. Dist. LEXIS 2665, at *3-*4 (N.D. Cal. Jan. 8, 2014).

Defendants argue that Plaintiffs' counsel may not properly represent Plaintiffs and the putative class while simultaneously representing the superior court plaintiffs.  Defendants note that the superior court plaintiffs filed opt-in notices in this case, and that the superior court plaintiffs' PAGA claim covers not only the superior court plaintiffs but also another individual who has opted in here.  Defendants assert that Plaintiffs' counsel may not represent two collective actions at the same time, and identify three types of purported conflicts of interest between the superior court plaintiffs and the federal Plaintiffs.  First, Defendants point out that counsel argued in the superior court case that the defendants engaged in "federal law averaging" that is lawful under federal law but not under California law.  According to Defendants, counsel now must inconsistently argue here that Defendants' did not engage in federal law averaging.  Second, Defendants assert that in order to be successful here, counsel will have to make allegations about, obtain declarations from, and put on evidence regarding, Plaintiffs that contradict the sworn testimony they gave in the superior court case.  Third, Defendants contend that counsel's efforts to settle the federal case may influence their representation of the superior court plaintiffs and vice versa.

Defendants also assert for the first time in their supplemental brief that Plaintiff's counsel have a conflict because they represent Jessica Carazo, a former managerial employee of Defendant Serramonte, in another case, Carazo v. Ali, et al., Case No.  Civ-525779 (Sup. Ct. San Mateo).

14

According to Defendants, Carazo was an office manager at the Serramonte body shop and has unique information not only about Defendant Serramonte, but also about Defendant Rick Ali. Defendants argue that in the Carazo case, Plaintiffs' counsel seek damages for the defendants' failure to pay the minimum wage or overtime, failure to provide meal periods and rest periods, failure to pay wages timely, failure to provide accurate wage statements, and for violation of the UCL. Defendants argue that by representing Carazo and the putative class here, counsel are improperly representing a putative class member in both an individual action and as part of a class action. Defendants further assert that Plaintiffs have disclosed Carazo as a material witness here and will "have to call Ms. Carazo as an adverse witness and essentially cross-examine her about payroll issues at Serramonte since she was responsible for paying putative class members and handled payroll, which puts them in a position adverse to their own client." (Defs.' Supp. Br. at 4.) According to Defendants, Plaintiffs' interests are not aligned with Carazo's because she was the former office manager in charge of payroll and will testify adversely to Plaintiffs. Defendants also maintain that counsel's representation of Plaintiffs and Carazo is improper because counsel will likely learn information from Carazo, thereby "avoid[ing] the proper channels of discovery." Defendants maintain that Plaintiffs cannot consent to their counsel's concurrent representation of them and Carazo because as "mere laymen" their consent cannot be intelligent or informed.

Plaintiffs argue that Lou v. Ma Labs. Inc., 2014 U.S. Dist. LEXIS 2665, is distinguishable because that case was decided at the class certification stage and addressed an actual conflict of interest, like the Supreme Court case upon which it relied, Ortiz v. Fibreboard Corp., 527 U.S. 815, 856 (1999). Plaintiffs argue that the conflict issue here is not ripe and should be reached only on a motion to disqualify or at the class certification stage. Plaintiffs also argue that there is no actual conflict of interest between their representation of the superior court plaintiffs and the federal Plaintiffs. Plaintiffs rely on Newberg on Class Actions for the principle that class counsel may represent multiple sets of litigants, whether in the same action or a related proceeding, so long as the litigants' interests are not inherently opposed. Plaintiffs assert that the superior court case and the federal case do not involve competing classes because the former is not a class action. Plaintiffs further argue that Defendants have not shown that they are insolvent or may not be able to pay off

15

1  all claims -- contrary to Plaintiffs' argument that the Court should deem Defendants alter egos of
2  each other because of the inability of the corporate Defendants to satisfy a potential judgment.
3  Plaintiffs also maintain that they will not have to take an inconsistent position on "federal law
4  averaging" because their FLSA claim in the federal case does not involve averaging.  Finally,
5  Plaintiffs argue that "it is hard to fathom what potential conflict" is created by their representation of
6  Carazo.

7  Class counsel may be inadequate under Rule 23 if they seek to represent class members with
8  different interests.  See Ortiz v.  Fibreboard Corp., 527 U.S. 815, 856 (1999) ("First, it is obvious
9  after Amchem that a class divided between holders of present and future claims (some of the latter
10 involving no physical injury and to claimants not yet born) requires division into homogeneous
11 subclasses under rule 23(c)(4)(B), with separate representation to eliminate conflicting interest of
12 counsel.").  The Court in Ortiz cited Moore's Federal Practice for the proposition that "an attorney
13 who represents another class against the same defendant may not serve as class counsel." Id.  No
14 actual conflict of interests is required for disqualification; even the appearance of divided loyalties
15 of counsel is contrary to class counsel's responsibility to absent class members.  Kayes v.  Pac.
16 LumberCo., 51 F.3d 1449, 1465 (9th Cir. 1995) (finding that district court did not abuse discretion
17 in requiring class counsel to withdraw from representing named plaintiffs in individual actions in
18 order to represent class).  "The 'appearance' of divided loyalties refers to differing and potentially
19 conflicting interests and is not limited to instances manifesting such conflict."  Id.  Nevertheless,
20 class counsel will not necessarily be disqualified merely for representing another class against the
21 same defendants when, for instance, the purported conflicts are illusory and speculative, the class
22 has co-counsel untainted by the conflict, and there were procedural safeguards protecting the class's
23 interests, such as requiring disclosure of the potential conflict to class members and requiring court
24 approval for settlements.  Sheftelman v. Jones, 667 F. Supp. 859, 865-66 (N.D. Ga. 1987).

25 In Lou, the court found that class counsel could not adequately represent the proposed class
26 because counsel also represented another class in state court against the same defendants alleging
27 many of the same or substantially similar claims as in the federal case.  Lou, 2014 U.S. Dist. LEXIS
28 2665, at *7.  The court cited Ortiz and pointed out that according to McLaughlin on Class Actions,

16

"[c]ourts have consistently held that counsel cannot simultaneously represent a class and prosecute either individual or class claims against the same defendants in a different proceeding, even if there is partial overlap among the plaintiffs or class members in the cases." Id. at *5-*6. The court noted that risk of counsel compromising one class for another is high in such situations. Id. at *6. The court also noted that although Rule 23 does not apply to a FLSA collective action, a district court has discretion over such actions.

The Court declines to disqualify counsel on this record at this stage of the proceedings. Lou and Ortiz both assessed the adequacy of counsel at the class certification stage. Moreover, in Ortiz, the court was concerned about the fairness of a class settlement, and noted that "a class divided between holders of present and future claims . . . requires division into homogenous subclasses under Rule 23(b)(4)(B) with separate counsel to eliminate conflicting interests of counsel." 527 U.S. at 856. It was under those circumstances, not present here, that the Court cited Moore's Federal Practice § 23.25[5][e] for the proposition that "an attorney who represents another class against the same defendant may not serve as class counsel." Id.

The treatise Newberg on Class Actions § 3:75 (5th ed.) takes a more nuanced approach:

> Like a lawyer in any litigation, a class action attorney may not simultaneously represent two clients if those clients' interests are directly adverse or if there is significant risk that the dual representation will materially limit the lawyer's representation of one client. Such attorney conflicts, like those of the class representative, are material to the question of whether the proposed class counsel can adequately represent the class; but as with class representatives, only client conflicts that are material and presently manifest—rather than merely trivial, speculative, or contingent on the occurrence of a future event—will affect the adequacy of class counsel.

Id. (internal footnotes omitted). According to Newberg, "[i[n general, class counsel may represent multiple sets of litigants—whether in the same action or in a related proceeding—so long as the litigants' interests are not inherently opposed." Id. Newberg notes that concurrent representation may be beneficial in some situations, and that courts have found counsel inadequate due to conflicts where "the recovery of one group in one forum inherently conflicts with the recovery of the other." Id. Newberg sets forth examples such as where a limited fund means that the recovery of one claimant will cut directly into recovery by another, where substantive law permits recovery by only one or the other set of litigants, where one client is litigating an appeal to a class action settlement in

17

which another client claimed recovery, and where counsel's actions have generated conflicts between class representatives and the class. Id.

At this stage, Defendants have only raised speculative concerns about conflicts of interest between the superior court plaintiffs and the federal Plaintiffs. It is not clear that Plaintiffs are taking inconsistent positions on the "federal averaging" in the two cases. Defendants also fail to show how Plaintiffs' arguments in this case would impact the superior court plaintiffs or vice versa. Defendants's argument that counsel will have to submit evidence in this case contradicting Plaintiffs' sworn testimony in the superior court case is unsupported. Plaintiffs allege here that they were employed by Autowest and M1 Collision Care Centers, and, under alter ego and other theories, were necessarily employed by the other Defendants. These allegations are not inconsistent with Plaintiffs' superior court declarations; Plaintiffs stated in the declarations that they worked for Autowest, and Plaintiff Sandoval stated in his declaration that he worked for the Concord body shop, which Plaintiffs argue was owned by M1 Collision Care Centers. Moreover, while it is possible that counsel may compromise Plaintiffs' claims for superior court plaintiffs' claims, or vice versa, at some point, Defendants have not suggested that Plaintiffs' counsel have done so or failed to litigate either case vigorously due to the concurrent representation. Of course, if a class is certified here, any class settlement would be subject to Court oversight for fairness and adequacy of counsel.

More troubling is Defendants' recently raised argument about Plaintiffs' counsel's concurrent representation of a management employee in another case, Carazo v. Ali, et al., Case No. Civ-525779 (Sup. Ct. San Mateo). Plaintiffs' counsel disclosed Carazo as witness here despite representing her as a client in another case, which may implicate counsel's duty of loyalty to Plaintiffs and Carazo. For instance, in Baas v. Dollar Tree, Case No. 07-3108 JSW, 2008 WL 906496, at *2-*4 (N.D. Cal. Apr. 1, 2008), counsel represented a putative class of employees against defendant Dollar Tree Stores ("Dollar Tree"), and represented the manager of the Dollar Tree store in which the named plaintiffs worked in a different lawsuit against Dollar Tree. Id. at *1-*2. The court noted that this concurrent representation implicated counsel's duty of loyalty to their clients under California Rule of Professional Responsibility 3-310(B)(1): "'The spectacle of an attorney skewering her own client on the witness stand in the interest of defending another client demeans the

integrity of the legal profession and undermines confidence in the attorney-client relationship.'" Id. at *2 (quoting Hernandez v. Paicius, 109 Cal. App. 4th 452, 467 (Cal. Ct. App. 2003)). The court also looked to an American Bar Association opinion stating that "a lawyer who in the course of representing a client examines another client as an adverse witness in a matter unrelated to the lawyer's representation of the other client or conducts third party discovery of the client in such a matter will likely face a conflict that is disqualifying in the absence of appropriate client consent." Id. The court noted that the manager-client was a witness in the putative class action and that one of the named plaintiffs and the manager-client made inconsistent statements in declarations. Id. at *3. Consequently, "[f]rom the testimony in the record, it appears as Plaintiffs' counsel will either have to cross-examine [the manager] and impeach his credibility or 'soft-pedal' their examination of the manager to the detriment of their representation of the class members in this action." Id. at *4. The court noted that even if the conflict would be waived, counsel would need to obtain waivers from every class member, which, as a practical matter, they could not do from the absent class members. Id. The court therefore concluded that plaintiffs had not demonstrated that their counsel would adequately represent the class as required by Federal Rule of Civil Procedure 23(a)(4) and denied class certification. Id.

The record before this Court is less developed than in Baas. Defendants assert that "Plaintiffs will have to call Ms. Carazo as an adverse witness and essentially cross-examine her about payroll issues at Serramonte since she was responsible for paying putative class members and handled payroll, which puts them in a position adverse to their own client." (Defs.' Supp. Br. at 4.) Similarly, Defendants argue that Carazo had access to confidential financial information, payroll, employee information, ownership structure, and the owner's finances. Plaintiffs do not deny that Carazo was a managerial employee or that she might be a witness, but conclusorily and unpersuasively claim that it is "hard to fathom what potential conflict this can create." (Pl.'s Supp. Br. at 5.) Still, it is unclear at this point whether Carazo will be called as an adverse witness, and whether her testimony would implicate the duty of loyalty. Therefore, the Court denies Defendants' request to disqualify Plaintiffs' counsel without prejudice. Should the case reach the class certification stage, Plaintiffs will bear the burden of establishing the adequacy of counsel.

19

**IV.     Conclusion**

The Court grants in part and denies in part Defendants' motion to dismiss, grants Defendants' motion to strike, and denies Defendants' request to disqualify Plaintiffs' counsel without prejudice.

**IT IS SO ORDERED.**

Dated: March 28, 2014

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge