1   CHRISTINE H. LONG, CA STATE BAR NO. 199676
    KARA L. ARGUELLO, CA STATE BAR NO. 221093
2   BERLINER COHEN, LLP
    TEN ALMADEN BOULEVARD
3   ELEVENTH FLOOR
    SAN JOSE, CALIFORNIA 95113-2233
4   TELEPHONE: (408) 286-5800
    FACSIMILE: (408) 998-5388
5   christine.long@berliner.com
    kara.arguello@berliner.com
6
    ATTORNEYS FOR DEFENDANTS BOBBY A. ALI; RICK ALI[1];
7   M1 COLLISION CARE CENTERS, INC.[2]; AUTOVEST
    COLLISION REPAIRS, INC., DBA AUTOWEST COLLISION
8   REPAIRS, INC.; AND AW COLLISION OF SERRAMONTE[3]

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                    SAN FRANCISCO DIVISION

12  RAFAEL SANDOVAL, LUIS MARTIN        CASE NO.  CV 13-03230 EDL
    CALIXTO, and ADRIAN RAMIREZ on behalf
13  of themselves, on behalf of all others similarly   **DEFENDANTS' OPPOSITION TO**
    situated and in the interest of the general public,   **PLAINTIFFS' MOTION FOR CLASS**
14                                       **CERTIFICATION AND APPOINTMENT**
                Plaintiffs,              **OF CLASS COUNSEL**
15
            v.
16                                       Date:      July 21, 2015
    BOBBY A. ALI; RICK ALI, M1 AUTO      Time:      9:00 a.m.
17  COLLISIONS CENTERS, INC.; M1         Dept.:     Courtroom E, 15th Floor
    COLLISION CARE CENTERS, INC.;                   450 Golden Gate Avenue
18  AUTOVEST COLLISION REPAIRS, INC. aka            San Francisco, CA 94102
    AUTOWEST COLLISION REPAIRS,
19  INC.; and SERRAMONTE AUTO PLAZA BODY  Judge:     Hon. Elizabeth D. Laporte
    SHOP, INC.,
20
                Defendants.
21

22

23

24

25

26  ───────────────────────
    [1] Defendants Bobby Ali and Rick Ali were dismissed with prejudice from this action by the Court's Order of
27  7/10/2014.

    [2] Erroneously sued as "M1 Auto Collisions Centers, Inc."
28
    [3] Erroneously sued as "Serramonte Auto Plaza Body Shop, Inc."
    CASE NO.  CV 13-03230 EDL
───────────────────────
    DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

# **TABLE OF CONTENTS**

Page

I.      SUMMARY OF ARGUMENT.............................................................................. 1

II.     FACTUAL BACKGROUND. ............................................................................. 1

        A.      Defendants Are All Entities in Good Standing......................................... 1

        B.      Defendants Had Lawful Piece Rate and Rest Break Policies. ................... 2

        C.      Defendants Properly Tracked Employees' Working Hours....................... 4

        D.      Employees PAID for Each Hour Worked At Their Hourly Rate............... 5

III.    PROCEDURAL BACKGROUND. ..................................................................... 5

        A.      The 2008 State Court ("*Juarez*") Action................................................ 5

                1.      Plaintiffs Lost At Trial On All Individual and PAGA Claims. .................... 6

        B.      INSTANT LAWSUIT. ........................................................................... 6

IV.     PLAINTIFFS' CLAIMS ARE BARRED BY RES JUDICATA AND STATUTE
        OF LIMITATIONS.......................................................................................... 7

        A.      Plaintiffs Seek to Certify a Class Outside the statute. ............................. 7

                1.      The Instant Action is Nothing More than Forum-Shopping........................ 7

                2.      The Statute of Limitations was Not Tolled by *Juarez*. ............................... 7

        B.      Proposed "Class No. 3" Over-Reaches to Include Employees from
                Sunnyvale and Fremont. ....................................................................... 9

V.      CLASS CERTIFICATION SHOULD BE DENIED UNDER RULE 23. .......................... 9

        A.      Plaintiffs Do Not Have the Required Numerosity to Certify a Class for its
                Opt-In FLSA Claim. ............................................................................ 9

        B.      Plaintiffs Cannot Show Commonality. ................................................... 10

                1.      There is No Commonality on the Rest Break Claim.................................. 11

                2.      No Commonality on "Waiting" or "Administrative" Time Claims. ........... 14

                3.      The Alleged Rest Break Violations Do Not Meet Commonality
                        Standard ........................................................................................... 22

                4.      The Claim for Inaccurate Wage Statements Requires Individual
                        Inquiry as to Specific Injuries. .......................................................... 23

        C.      Plaintiffs Have Not Shown the Typicality Required for Class Certification........... 24

                1.      Body Men Were Paid Differently Than Paint Team Members. ................. 24

CASE NO. CV 13-03230 EDL
-i-
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

4849-0336-3364v4
KARGUELLO\15321004

2. Variations Exist in Application of Piece Rate System. ................................ 25

3. Different Paint Teams Were Compensated Differently. ............................... 25

4. Not All Putative Class Members were Piece Rate Workers for the Entire Class Period. ....................................................................................... 25

5. The Detail "Deduction" Was Not A Policy Across The Putative Class. ......................................................................................................... 26

6. The Uniform Deduction Did Not Affect All Putative Class Members. ..................................................................................................... 26

D. PLAINTIFFS' COUNSEL DO NOT ADEQUATELY REPRESENT THE CLASS. .............................................................................................................. 26

VI. THIS CASE CANNOT BE CERTIFIED AS A CLASS UNDER RULE 23(B)(2). .......... 27

A. Individual Issues Predominate All of Plaintiffs' Claims. .......................................... 27

B. Plaintiffs' Reliance On Improper Sampling Demonstrates that A Class Action is Not the Superior Method for Adjudicating this Claim. ............................ 27

1. Sampling Is Not Appropriate, and the Inadmissible Attorney Declarations Offer No Proposal for Management of the Class Action. ........................................................................................................... 28

2. Plaintiffs Make No Proposals about Managing the Numerous Issues. ........ 29

VII. THIS CLAIM IS NOT APPROPRIATE FOR FLSA §216(B) CONDITIONAL CERTIFICATION. ................................................................................................ 30

A. Regardless of the Standard, Plaintiff Has Not Shown Sufficient Evidence to Establish that there are Other Employees Who Desire to Join The Lawsuit. ......... 30

B. Plaintiffs Have Not Shown that they are "Similarly Situated" to Other Putative Class Members. ............................................................................................. 31

C. a Collective Action Would Not Increase Judicial Efficiency. .................................. 31

VIII. CONCLUSION ...................................................................................................... 31

4849-0336-3364v4
KARGUELLO\15321004

# <u>TABLE OF AUTHORITIES</u>

Page

## Cases

*Alonzo v. Maximus, Inc.*
 275 F.R.D 513 (2011)................................................................................................ 20

*Amchem Prods, Inc. v. Windsor*
 521 U.S. 591 (1997) ................................................................................................ 27

*American Pipe & Construction Co v. Utah*
 414 U.S. 538 (1974) .................................................................................................. 8

*Armenta v. Osmose, Inc.*
 135 Cal.App.4th 314 (2005)...................................................................................... 13

*Basch v. Ground Round, Inc.*
 139 F.3d 6 (1st Cir. 1998) .......................................................................................... 8

*Basco v. Wal-Mart Stores, Inc.*
 No. CIV. A. 00-3184
 2004 WL 1497709 (E.D. La. July 2, 2004) ........................................................ 22, 31

*Bibo v. Federal Express, Inc.*
 No. C-07-2505-TEH,
 2009 WL 1068880 (N.D. Cal. April 21, 2009)........................................................ 17

*Bluford v. Safeway Stores, Inc.*
 216 Cal.App.4th 864 (2013)...................................................................................... 11

*Brothers v. Portage Nat'l Bank*
 No. 3:05-94, 2007 WL 965835
 (W.D. Pa. Mar. 29, 2007) .......................................................................................... 21

*Burt v. Manville Sales Corp.*
 116 F.R.D. 276 (D. Colo. 1987)................................................................................ 31

*Catholic Social Services, Inc. v. I.N.S.*
 232 F.3d 1139 (9th Cir. 2000)..................................................................................... 8

*Dailey v. Sears, Roebuck & Co.*
 214 Cal.App.4th 974 (2013)...................................................................................... 17

*Diaz v. Electronics Boutique of America, Inc.*
 No. 04-CV-0840E
 2005 WL 2654270 (W.D.N.Y. 2005) .................................................................. 21, 22

*Dunbar v. Albertson's Inc.*
 141 Cal. App. 4th 1422 (2006).................................................................................. 29

*Duran v. U.S. Bank Nat'l Assn*
 203 Cal.App.4th 212 (2012), rhg denied,
 2012 Cal. App. LEXIS 265 (Cal. App. 1st Dist. Mar. 6, 2012)................................ 29

CASE NO. CV 13-03230 EDL
-iii-
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

4849-0336-3364v4
KARGUELLO\15321004

*Elliot v. Spherion Pacific Work, LLC*
    (C.D. Cal. 2008) 572 F. Supp. 2d 1169
    *aff'd* 368 Fed. Appx. 761 (9th Cir. 2011) ............................................................... 23

*Ellis v. Costco Wholesale Corp.*
    657 F.3d 970 (9th Cir. 2011) .................................................................................... 10

*Forrand v. Federal Express Corp.*
    Case No. 2:08-cv-01360-DSF-PJW
    (C.D. Cal., Apr. 25, 2013) ........................................................................................ 21

*Forrester v. Roth's I.G.A. Foodliner, Inc*
    646 F.2d 413 (9th Cir. 1981) .................................................................................... 21

*Gen. Tel. Co. of the Sw. v. Falcon*
    457 U.S. 147 (1982) .................................................................................................... 9

*General Tel. Co. of Northwest, Inc. v. EEOC*
    (1980) 446 U.S. 318 ................................................................................................... 9

*Gonzalez v. Downtown LA Motors, Inc.*
    (2013) 215 Cal.App.4th 36 ....................................................................................... 14

*Griffin v. Singletary*
    17 F.3d 356 (11th Cir. 1994) ..................................................................................... 8

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) ............................................................................ 10, 24

*Hanon v. Dataproducts Corp.*
    976 F.2d 497 (9th Cir. 1992) .................................................................................... 24

*Harik v. California Teachers Ass'n*
    (9th Cir. 2003) 326 F.3d 1042 ................................................................................. 10

*Haro v. City of Los Angeles*
    745 F.3d 1249 ............................................................................................................ 7

*Hernandez v. Chipotle Mexican Grill*
    189 Cal. App. 4th 751 (2010) ................................................................................... 29

*Ikonen v. Hartz Mountain Corp.*
    122 F.R.D. 258 (S.D. Cal. 1988) ................................................................................ 9

*In re Countrywide Fin. Corp. Sec. Litig.*
    No. CV-07-05295-MCP
    2009 U.S. Dist. LEXIS 129807
    (C.D. Cal. Dec. 9, 2009) ............................................................................................. 9

*Jasper v. C.R. England, Inc.*
    No. CV 08-5266-GW
    2009 U.S. Dist. LEXIS 34802
    (C.D. Cal. Mar. 30, 2009) ........................................................................................ 23

*Local Jt. Exec. Bd. Culinary/Bartender Tr. Fund v. Las Vegas Sands, Inc.*
    244 F.3d 1152 (9th Cir. 2001) .................................................................................. 27

*Parker v. Rowland Express, Inc.*
    492 F.Supp.2d 1159 (D. Minn. June 25, 2007) .......................................................... 30

*Salazar-Calderon v. Presidio Valley Farmers Ass'n*
    765 F.2d 1334 (5th Cir. 1985).......................................................................................... 8

*Salazer-Calderon v. Presidio Valley Farmers Ass'n*
    765 F.3d 1334 (5th Cir. 1985).......................................................................................... 8

*Simmons v. T-Mobile USA, Inc.*
    No. H-06-1820, 2007 WL 210008
    (S.D. Tex. Jan. 24, 2007).................................................................................................. 30

*Valentino v. Carter-Wallace, Inc.*
    97 F.3d 1227 (9th Cir. 1996)....................................................................................... 9, 27

*Vasquez v. First Student, Inc.*
    Case No. 2:14-CV-06760-ODW
    2015 U.S. Dist. LEXIS 30631 (C.D. Cal. March 12, 2015) ...................................... 14

*Velasquez v. Khan*
    No. CIV. S 01-0246 MCE DAD
    2005 U.S. Dist. LEXIS 34681
    (E.D. Cal. Jul. 11, 2005).................................................................................................. 24

*Villacres v. ABM Industries, Inc.*
    384 Fed. Appx. 626 (9th Cir. 2010)............................................................................... 23

*Wal-Mart Stores, Inc. v. Dukes*
    131 S.Ct. 2541 (2011) ...................................................................................... 10, 11, 27

*Wash. Mut. Bank v. Superior Court*
    24 Cal.4th 906 (2001)........................................................................................................ 29

*Washington v. Joe's Crab Shack*
    271 F.R.D. 629 (2010)....................................................................................................... 21

*Weigle v. FedEx Ground Package System, Inc.*
    No. 06cv13302008, WL 410691
    (S.D.Cal. 2008)................................................................................................................... 18

*West v. Border Foods, Inc.*
    No. 05-2525, 2006 WL 1892527
    (D. Minn. July 10, 2006).................................................................................................. 21

*White v. Baptist Meml. Health Care Corp.*
    699 F.3d 869 (6th Cir. 2012)........................................................................................... 21

*Zinser v. Accufix Research Inst., Inc.*
    253 F.3d 1180 (9th Cir. 2001)......................................................................................... 28

**Statutes**

29 United States Code section 255....................................................................................... 7

29 United States Code section 255(a) ................................................................................. 7

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

1    California Labor Code section 2699 ........................................................................ 6

2    Federal Rules of  Civil Procedure section 23(b)(3) ........................................... 27

3    Federal Rules of Civil Procedure Rule  23(a)(2) .............................................. 10

4    Federal Rules of Civil Procedure Rule 23 ........................................................ 9

5    Federal Rules of Civil Procedure Rule 23(a)(1) .............................................. 9

6    Labor Code section 226(a)(3).............................................................................. 16

7    **Other Authorities**

8    DLSE Bulletin 84-3 ............................................................................................ 16

9    DLSE Manual § 2.2 ........................................................................................... 18

10    DLSE Manual § 2.2 ........................................................................................... 2

11    DLSE Manual § 2.5.3 ........................................................................................ 3

12    DLSE Manual § 49.2.2 ...................................................................................... 19

13    DLSE Manual § 49.2.3 ...................................................................................... 24

14    DLSE Manual §47.2.1 ....................................................................................... 17

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4849-0336-3364v4
KARGUELLO\15321004

## TABLE OF ISSUES FOR CLASS CERTIFICATION

1.  Are Plaintiffs' claims barred by res judicata or collateral estoppel?

2.  Does the proposed Autovest (Autowest) class period exceed the statute of limitations?

3.  Do Plaintiffs satisfy the Rule 23(a)(1) numerosity requirement on their Opt-In FLSA Claim?

4.  Do Plaintiffs satisfy the Rule 23(a)(2) commonality requirement on their claims?

  a.  Can there be common proof on whether the piece rate system compensated for administrative time when there is no way for employer or employees to track administrative time?

  b.  Can there be common proof on whether the piece rate system compensated for waiting time when there is no evidence or record of waiting time?

  c.  Can there by common proof on whether the piece rate system compensated for rest breaks when the experiences of workers as to breaks varied greatly?

  d.  Can there be common proof on the question of whether each class member has suffered injury as a result of inaccurate wage statements?

5.  Do Plaintiffs satisfy the Rule 23(a)(3) typicality requirement on their claims?

  a.  Are the Plaintiffs' claims regarding overtime typical of a proposed class consisting of body men, painters, preppers, and polishers who were all paid differently?

  b.  Are the Plaintiffs' claims regarding overtime typical of a proposed class wherein not everyone was paid piece rate for the entire class period?

  c.  Are the Plaintiffs' claims regarding detail deduction typical of the proposed class when not all class members experienced the deduction?

  d.  Are the Plaintiffs' claims regarding uniform deduction typical of the proposed class when not all class members wore uniforms?

6.  Do Plaintiffs satisfy the Rule 23(a)(4) requirement of adequacy of representation?

  a.  How can Plaintiffs' counsel avoid their conflict of interest?

7.  Do Plaintiffs satisfy the Rule 23(b)(3) requirements?

  a.  How can common questions of law predominate when the proposed classes

consist of individuals who were paid differently, and were not under the piece rate system for the entire class period?

        b.     Is class action the superior method of adjudicating this case where Plaintiffs rely on improper sampling and have proposed no method for managing the individual issues that abound?

4849-0336-3364v4
KARGUELLO\15321004

I.      **SUMMARY OF ARGUMENT.**

Plaintiffs, ignoring the res judicata effect of the *Juarez* Judgment in favor of Defendants, move for class certification on the same evidence and testimony that they relied upon in the *Juarez* state law action. The theory is identical: despite a policy requiring the use of a time clock to report hours, they did not follow the policy, did not record all hours worked, and now seek additional unquantified compensation. Further, Plaintiffs seek additional compensation for "administrative" work and waiting between jobs. There is no definition of "administrative" work and all employees agreed that when they went to trainings they were paid their hourly flag rate. Additionally, employees' waiting time varied widely, with many stating they were always busy and could only recall a few instances of waiting. While a few employees claim they had to wait for work, they were the exception, not the norm. The evidence confirms that no common method of proof exists for the off-the-clock, untracked, or unreported "administrative" or waiting time.

Plaintiffs proposed "research model" does not solve the individual inquiry problem. While the Supreme Court made clear that samplings are not appropriate in class actions, the model is also flawed because it is not defined, fails to account for variances between the three body shops, including the differences in how painters, preppers and bodymen were paid, or that some employees switched from hourly to piece rate and back again.

Plaintiffs have failed to demonstrate the requisites for either a class action or a collective action.  Certification should be denied.

II.     **FACTUAL BACKGROUND.**

Plaintiffs and Opt-In Plaintiffs (collectively "Plaintiffs") have sued three entities that are all autobody repair centers and have a related owner, yet, the evidence demonstrates each was managed and operated in different ways.

A.      Defendants Are All Entities In Good Standing.

Autovest Collision Repairs, Inc. was formed in 1996, operated as Autowest and became AW Collision, Inc. in 2013. It is an auto body collision repair facility currently operating in San Jose. M1 Collision Care Centers, Inc. is a California corporation which previously did business as Fremont

4849-0336-3364v4
KARGUELLO\15321004

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

1   Collision Care Centers (sold), Concord Collision Care Centers, and Sunnyvale Collision Care Centers

2   (closed/assets sold). Today, Concord Collision Care Center is known as AW Collision, Inc. dba AW

3   Collision of Concord.  Serramonte Auto Plaza Body Shop, Inc. became a dba of AW Collision NC1

4   and is lawfully registered as the same. RJN, Exhibits R-U. While Plaintiffs seek to represent a class of

5   employees who worked at Sunnyvale Collision Care Center and Fremont Collision Care Center, none

6   of the plaintiffs were ever employed by those entities[4].

7       B.       Defendants Had Lawful Piece Rate And Rest Break Policies.

8              Plaintiffs acknowledge Defendants had a lawful policy of providing rest breaks.

9   However, they argue that the hourly piece rate system failed to compensate piece rate workers

10  (including body men, painters, preppers, and polishers) for their rest breaks, overtime and

11  "administrative" time spent on non-repair tasks. Cert. Mot. at p. 7:7-8, 8:18-9:8; 18:22-26.  Defendants

12  did not require uncompensated administrative work, and its pay method properly compensated

13  employees for all hours worked.

14             Plaintiffs confirmed that between the years of 2005-2008 they were paid on a "piece rate"

15  system authorized by the DLSE.  RJN, M DLSE Manual § 2.2. The piece rate system was not created

16  by Defendants; it is commonly used in the auto body repair industry. Certain Plaintiffs are paid

17  similarly at their current employers.  Long Dec., Ex. 4 (Calixto at 9:19-10:20).

18             The piece rate system utilized at each Defendant entity is measured and paid in flag hours, not

19  by the true "piece" (i.e., payment for each fender, bumper or headlight completed). Defendants utilize

20  two software systems to estimate repairs. Generally, the software populates the hours associated with

21  each repair; however, some items require the independent judgment of the estimator. Dec. of Alex

22  Astts , ¶11.  The software companies use time studies to determine how long it takes the average

23  employee to perform a repair, including time for breaks, getting tools, looking up orders, gathering

24  parts, and cleaning up after the repair.  Dec. of Astts, ¶ 10, Ex. 25 (Wayne Krause Dec., ¶ 4-5); Ex.27

25  (Krause *Juarez* Tes. at 1812:13-1813:4).

26

27  _____

[4]Calixto claims he worked for one week at Sunnyvale on loan from Autowest and confirms he was an Autowest
28  employee and that Autowest paid him.  Long Decl., Ex.23 (Calixto *Juarez* Dec.), ¶ 13.

1    In this case, employees have confirmed that if the hours assigned to a repair were not sufficient,

2    they could ask for more.[5] The work is not assigned until the repair is authorized and the parts ordered.

3    The work order dictates how many hours the employee will be paid for the car no matter how quickly

4    he repairs the car. Long Dec., Exs. 4 (Calixto at 29:2-8), 10 (Lopez Sr. at 23:20-23).  The Plaintiffs

5    have all consistently testified that they completed repairs in less time than the hours allotted. Long

6    Dec., Ex. 6(Sandoval at 77:19-22, 79:9-80:8), 10 (Lopez Sr. at 16:24-17:2). Each confirmed he was

7    always paid for all hours reflected in the work order. Long Dec., Exs. 6 (Sandoval at 82:8-83:13, Exs.

8    1, 6-7), 8 (Flores at 40:19-41:22), 10 (Lopez, Sr. at 59:25-60:10), 9 (Llamas at 20:19-21:12), 12

9    (Sifuentes at 60:9-13), and 4 (Calixto at 49:17-22).

10    The employees (painters and bodymen) confirmed they were given a summary of their piece

11    rate hours weekly to confirm its accuracy. Long Dec., Exs. 8 (Flores at 92:22-93:11, Ex. 11), 10

12    (Lopez, Sr. at 59:4-7, 39:20-24, Ex.13 ), 9 (Llamas at 32:2-33:1, Exs. 16-17), 6 (Sandoval at 80:12-

13    83:13, Exs. 6-7), 4 (Calixto at 71:5-74:7, Exs. 28-29), 11(Lopez Jr. at 30:15-19);  Avendano Dec., ¶21-

14    22; Bioc Dec., ¶22-23; Davila Dec., ¶26-27; Fuentes Dec., ¶17-18; Gomes Dec., ¶24-25; Gutierrez

15    Dec., ¶24-25; Hernandez Dec., ¶17-18; Mata Dec., ¶19-20; Mendieta Dec., ¶20-21; Prado Dec., ¶23-

16    24; Soto Dec., ¶25-26.

17    Each body man was paid the total number of flag hours he completed in a week multiplied by

18    an hourly flag rate (usually between $19-$22/hour).  By contrast, painters, preparers and polishers, also

19    piece-rate employees, were paid differently – on what was called the "Pie System" whereby they split

20    hours based on teams. (DLSE Manual § 2.5.3) The total flag rate hours completed by the entire team

21    for the week were compiled and multiplied by the painter's flag rate which was then split, according to

22    percentages decided by the painter, among the various team members.  Long Dec., Ex. 24 (Rich

23    Albright Dec. ¶4).  At some shops, the paint team consists of painters, 1-2 preppers, and a polisher,

24    each of whom participates in the split. Bioc Dec. ¶9; Davila Dec. ¶8.  In other situations, the polisher

25    is not paid a split of the flag hours–only the painter and the prepper(s).  In those situations, the polisher

26    is paid on an hourly basis. Soto Dec. ¶8. In a third set of circumstances, sometimes the painter is paid

27

28

---

[5]  Astts Dec. ¶ 12; Avendano Dec. ¶ 11; Bioc Dec. ¶3-4, 10; Davila Dec. ¶16; Fuentes Dec. ¶3; Damasceno Dec. ¶3, 9-10; Gutierrez Dec.¶9; Hernandez Dec. ¶3, 9; Robles Dec. ¶3,9; Mendieta Dec.¶3,11; Prado Dec.¶4, 9; Soto Dec. ¶3, 12.

on the flag rate basis but the preparers are paid on an hourly basis. Avendano Dec. ¶8. Plaintiffs'

motion fails to address these nuances.

        C.    <u>Defendants Properly Tracked Employees' Working Hours.</u>

        Each defendant entity required all piece rate workers to use a time clock. Doc. #75-2

(4/18/15) at p. 111 (Palau Dec.); Astts Dec. ¶ 16-17; Bioc Dec. ¶20; Davila Dec. ¶24; Gutierrez Dec.

¶20; Avendano Dec. ¶20; Gomes Dec. ¶19; Hernandez Dec. ¶14; Mata Dec. ¶16; Soto Dec. ¶21;

Fuentes Dec. ¶14; Mendieta Dec. ¶16; Prado Dec. ¶20.  Workers were required to clock in at the

beginning of their shift regardless of whether cars were immediately available for repair.  The total

hours they were present at the shop, working or not ("clock hours"), were tracked on a weekly basis.

        Plaintiffs assert that the computers were always broken or they did not use the time clock, yet

time records exist for each.  They were asked to sign and review weekly reports, some electronic and

some handwritten. Long Dec., Exs. 2, 4(Calixto Ex. 28-29); Dec. of Astts Ex2A-2H. Once confronted

with the evidence, Plaintiffs asserted they were asked to certify that they worked <u>only</u> 8 hours a day 5

days a week even if that was untrue. However, upon questioning, they admitted there was no such

requirement. Dec. of Astts, Ex2A-2H. For example, Manual Llamas admitted that he sometimes

worked 9 hours and that the time clock record he signed demonstrated a 9 hour work day for those

days he worked over 8 hours. Long Dec., Ex. 2A-H, 9 (Llamas p. 30:15-31:22, Ex. 19.

        Further, the declarations designed to corroborate the off-the-clock unreported overtime claims

are misleading. For example, Francisco Lopez declared that he would come in early on Mondays and

work until 8 or 9 p.m., yet at deposition he revealed that he would leave to take his son home around 5

p.m. and then, if needed, would return later to work because he had a key. Further, he testified that in

2010 all employees' keys to the shop were taken away and he could not work before the shop was

open, around 7:30–8 a.m. Long Dec., Ex. 2d, 10 (Lopez, Sr. at 64:10-21; 74:11-25[6]).

---

[6] Defendants object to the declarations of Sandoval, ¶¶6, 7, 9, 10; Calixto, ¶¶10, 19, 21; Ramirez, ¶¶7, 8; Flores, ¶7;
Llamas, ¶¶9, 10, 11, 12, 15 Lopez Jr. ¶¶5, 8, 11; and Lopez Sr. ¶¶11, 14, 17, 19 on the grounds that each is inconsistent
with testimony given at deposition and is vague and conclusory in violation of FRE 801(d)(1)(A) and 403. See Long
Dec. Ex. 28, for a detailed summary of the inconsistencies rendering the declarations inadmissible.

D.      Employees Paid For Each Hour Worked At Their Hourly Rate.

While it is true that Defendant entities paid employees on a piece rate, the pay system ensured employees were paid for each hour worked at their hourly rate of pay. Defendants also ensured piece rate workers were paid at an hourly rate of twice the minimum wage to comply with California's requirement for workers who provide their own tools. Long Dec., Exs. 18 (Nguyen 2015 at 72:13-73:8; 76:16-20, 78:22-79:25),  Ex. 19 (Nguyen Trial 84:27-85:14, 86:26-87:8); Astts Dec. ¶23-24.

The accounting staff would review the hours each week and determine if the workers were paid for each hour worked at his hourly rate of pay. Ms. Nguyen previously gave an example of Luis Martin Calixto for week ending March 28, 2008, when he worked 51.5 hours. Long Dec. Ex. 27, (Nguyen Dec.) ¶ 32. Ms. Nguyen confirmed that defendants determined that he was owed $1,259.50 for hours worked, and he was in paid $1,540.00 under the piece rate system, demonstrating that his compensation was greater than what was required. *Id.*

Employees confirmed they were paid for all of the flag hours shown on the work orders. The record also demonstrates that each week employees were paid far more than their actual shop hours. Francisco Lopez indicated that generally a skilled body man can do the work in 60% of the time allotted. Long Dec. Ex. 10 (Lopez, Sr. at 35:8-24). So while it is true that Plaintiffs worked overtime, Defendants ensured they were paid for it.

Further, the evidence demonstrates that if the employee had fewer flag hours than hours worked, they were paid the difference. (Long Dec. Ex. 19 (Nguyen Trial Tes. at 11:26-12:25, 28:12-22, 103:2-5, 114:4-10, Exs. 216 and 226); Bioc Dec. ¶25; Soto Dec. ¶23), however, most employees confirmed their piece rate was always greater than the hours worked.  Gomes Dec. ¶21, 25; Fuentes Dec. ¶20; Gutierrez Dec. ¶; Hernandez Dec. ¶20; Mendieta Dec. ¶22.

III.    **PROCEDURAL BACKGROUND.**

A.      The 2008 State Court ("*Juarez*") Action.

On September 4, 2008, Mallison & Martinez and Tomas Margain, the same attorneys who represent Plaintiffs here, filed an identical purported class action lawsuit against all of the Defendants stated herein and MB Bodyshop of San Francisco, Inc. in the Superior Court of California,

1   County of Santa Clara, entitled *Juarez v. Ali et al.*, Case No. 1-08-CV-121859 ("*Juarez*"). *See* Request

2   for Judicial Notice ("RJN") Ex. A and Motion to Dismiss filed concurrently herewith.  The Superior

3   Court entered its Order Denying Class Certification on April 23, 2012, finding that  Juarez lacked

4   standing to sue any entity for whom he had never worked and that his claims were not typical.  RJN

5   Ex. E, 5:11-13; 9:25-26.

6          1.    <u>Plaintiffs Lost At Trial On All Individual and PAGA Claims.</u>

7                  After the state court denied class certification without prejudice, Plaintiff made

8   no further attempt to certify a class.  Instead he amended the complaint to name another Plaintiff,

9   Adrian Ramirez (the same individual added to the *Sandoval* SAC, whom Plaintiffs now claim worked

10  at Serramonte). RJN Ex. H, ¶16.  He did so to attempt to recover damages from Autowest (since Juarez

11  had never worked at Autowest), and to recover wages on behalf of a Private Attorneys General Act

12  ("PAGA," Cal. Lab. Code §2699 *et seq.*) class consisting of individuals who worked both at Autowest

13  and MB as well as the "related entities" described in the complaint.  At trial, commencing August 22,

14  2013 and submitted on January 10, 2014, the plaintiffs sought to recover wages and penalties on behalf

15  of all similarly-situated employees at each shop.  The court issued Judgment in favor of Defendants on

16  all causes of action on July 9, 2014. RJN, Ex. I.

17        B.    <u>Instant Lawsuit.</u>

18                 In the meantime, on July 12, 2013, Plaintiffs filed the instant action seeking to represent

19  "All non-exempt piece rate employees who worked at Defendant entity California auto body shops

20  within four (4) years of the filing of the original Complaint in this action, plus any tolling from any

21  **State** court class actions filed, through the date of final disposition of this action."  RJN Ex. H ¶24.

22  Plaintiffs now take the position that *Juarez* was only against MB Bodyshop and as such there is no res

23  judicata or collateral estoppel. At the same time they contend that *Juarez* was against all of the current

24  defendant entities, invoking California tolling laws to extend the statute of limitations in this case.

25             Plaintiffs' motion also refers several times to the personal liability of Rick Ali and Bobby Ali,

26  formerly named individual Defendants.  However, this Court dismissed the individual defendants from

27  this case by its Order of March 28, 2014.  RJN Ex. J.

28

IV.   **PLAINTIFFS' CLAIMS ARE BARRED BY RES JUDICATA AND STATUTE OF LIMITATIONS.**

Defendants respectfully refer the Court to the detailed discussion of how Plaintiffs' claims are barred by res judicata and collateral estoppel, contained in the concurrently-filed Motion to Dismiss. Defendants contend that because these claims are barred by res judicata and/or collateral estoppel, class certification is inappropriate.

A.   Plaintiffs Seek To Certify A Class Outside The Statute.

Plaintiffs' proposed Class No. 1 contains "all non-exempt piece rate workers who worked at Autovest from September 4, 2004 to present." Cert. 14:9-10. The statute of limitations on a claim for unpaid wages is 2 years under California law or 3 years for a willful violation. 29 U.S.C. §§255, 255(a); *Haro v. City of Los Angeles*, 745 F.3d 1249, 1258 (2014). Despite taking the position that the judgment in *Juarez* was not binding on the plaintiffs or class members here, and has no preclusionary effect, Plaintiffs argue that the statute of limitations here was tolled by the filing of *Juarez* in 2008. Plaintiffs simply cannot have it both ways. Either *Juarez* was binding and adjudicated the issues herein, or else it was not binding and therefore did not toll the statute of limitations for the individuals seeking relief herein. If the court would certify "Class No. 1," it should be limited to non-exempt piece rate workers at Autowest from July 12, 2009 to present.

1.   The Instant Action is Nothing More than Forum-Shopping.

Plaintiffs could have asserted an FLSA claim in *Juarez* but did not; instead they decided to withhold evidence regarding each other entity named in that case to "save it" for the federal action. They added an FLSA claim here to obtain federal question jurisdiction one year after certification was denied in *Juarez* and when there was an indication from the *Juarez* court it would rule against them. This attempt at forum-shopping should not be permitted.

2.   The Statute of Limitations was Not Tolled by *Juarez.*

The majority of federal appellate courts addressing successive class actions have held that the statute of limitations is *not tolled* for a putative class representative who seeks to bring a successive class action upon denial of the first class certification. While "Federal law holds that the filing of a class action tolls the statutes of limitation for all members of the purported class until

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

1    certification is denied or the case is resolved"), *American Pipe & Construction Co v. Utah*, 414 U.S.

2    538 (1974) courts have found that if successive class actions were to receive the benefit of such tolling,

3    the statute of limitations would be tolled indefinitely and the defendant would have to defend

4    perpetually against repetitive class actions. This would "extend [] the statute of limitations beyond the

5    wildest dreams of those who enacted it." *Basch v. Ground Round, Inc.*, 139 F.3d 6, 11 (1st Cir. 1998);

6    *Salazer-Calderon v. Presidio Valley Farmers Ass'n* 765 F.3d 1334, 1351 (5th Cir. 1985).

7    Indeed, the  majority position is that *American Pipe* tolling is not applicable to a later-filed

8    class action.  See *Employers-Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital*

9    *Advisors,* 498 F.3d 920, 925 (9th Cir. 2007); and *Catholic Social Services, Inc. v. I.N.S.,* 232 F.3d

10   1139, 1147 (9th Cir. 2000) (en banc)("*CSS*") ( "[i]f class action certification had been denied, and if

11   plaintiffs in this action were seeking to re-litigate the correctness of that denial, we would not permit

12   plaintiffs to bring a class action"); *Robbin v. Fluor Corp.,* 835 F.2d 213 (9th Cir.1987) (*American Pipe*

13   did not allow tolling when class certification previously denied and second action sought to re-litigate

14   the issue of class certification and circumvent the earlier denial).  Plaintiffs "may not piggyback one

15   class action onto another and thus toll the statute of limitations indefinitely." *Griffin v. Singletary*, 17

16   F.3d 356, 359 (11th Cir. 1994); *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334,

17   1351 (5th Cir. 1985) ("[W]e decline to adopt any rule that has the potential for prolonging litigation

18   about class representation any further.")

19   Here, Plaintiffs are clearly attempting to re-litigate the denial of class certification in *Juarez*.

20   The plaintiffs are among those who were putative class members in *Juarez*, relying on their

21   declarations and evidence in the *Juarez* action to support their assertions here. Autovest is identical in

22   name, and while not named in the caption, Plaintiffs' complaint includes as Defendants M1 Collision

23   and Serramonte. RJN, Exh. F. The attorneys are the same.  The claims are the same.  The statute of

24   limitations for this successive action was not tolled by the filing of *Juarez.*  If any class is certified in

25   this case, the relevant time period does not extend back to 2004, as Plaintiffs contend, but only to 2 or

26   3 years before the filing of the complaint in the instant action (2010 or 2011).

27

28

B.   **Proposed "Class No. 3" Over-Reaches To Include Employees From Sunnyvale And Fremont.**

Plaintiffs' proposed "Class No. 3" purports to include "all non-exempt piece rate workers who worked at M1 from July 12, 2009 to present." Plaintiffs conceded that ***No Plaintiff was ever employed at either Sunnyvale or Fremont,*** thus if certified, the class is limited to employees of Concord.

## V.   CLASS CERTIFICATION SHOULD BE DENIED UNDER RULE 23.

Before certifying a class, the trial court must conduct a "rigorous analysis" to determine whether the party seeking certification has met the prerequisites of Rule 23. *Valentino v. Carter-Wallace, Inc*., 97 F.3d 1227, 1234 (9th Cir. 1996). The party seeking certification bears the burden of demonstrating that all requirements are satisfied. *In re Countrywide Fin. Corp. Sec. Litig.,* No. CV-07-05295-MCP, 2009 U.S. Dist. LEXIS 129807 at *34 (C.D. Cal. Dec. 9, 2009). Approving a party to represent and bind absent class members should not be taken lightly; nor should subjecting Defendants to the enhanced potential liability that comes with a certified class. *Id.* at 35. "The class action device was designed as an exception to the usual rule." *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982). Plaintiffs have failed to demonstrate that (1) the class is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Rule 23(a).

A.   **Plaintiffs Do Not Have The Required Numerosity To Certify A Class For Its Opt-In Flsa Claim.**

The class must be so numerous that joinder of all members individually is "impracticable." FRCP 23(a)(1). The numerosity requirement ensures that the class action device is used only where it would be inequitable and impractical to require every member of the class to be joined individually. Courts have found more than 40 members will suffice. *Ikonen v. Hartz Mountain Corp.,* 122 F.R.D. 258, 262 (S.D. Cal. 1988). A class of 15 or fewer has been held too small for certification. *General Tel. Co. of Northwest, Inc. v. EEOC* (1980) 446 U.S. 318, 330; *Harik v.*

1   *California Teachers Ass'n* (9th Cir. 2003) 326 F.3d 1042, 1051 (rejecting classes of 7, 9, and 10

2   members).

3         Plaintiff Adrian Ramirez's claims are barred by the doctrine of res judicata or collateral

4   estoppel, as he sought damages against MB Bodyshop, Autowest and Serramonte in *Juarez.* Plaintiffs

5   have withdrawn Opt-In Plaintiff Martin Juarez for the same reason and to avoid the conflict they have

6   with the prior representation. (Doc. No. 92, 5/7/15). *After* moving for certification Plaintiffs withdrew

7   Opt-In Salvador Flores Jr. because he was not a piece rate worker (not all technicians are piece rate).

8   (Doc. 92, 5/7/15). Opt-In Eddy Sifuentes' claims are barred by the doctrine of res judicata because he

9   was part of the *Juarez* PAGA group, gave testimony as a PAGA class member at trial, and sought to

10  recover damages against all Defendants herein.   With these eliminations, the total number of

11  participants in the FLSA claim is 5, which is insufficient to meet Rule 23's numerosity requirement.

12        B.    <u>Plaintiffs Cannot Show Commonality.</u>

13        Rule 23(a)(2) requires that "there are questions of law or fact common to the class."

14  Fed. R. Civ. P. 23(a)(2);  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998).  To satisfy

15  the commonality requirement, a class claim "must depend upon a common contention…of such a

16  nature that it is capable of class-wide resolution–which means that determination of its truth or falsity

17  will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*

18  *Stores, Inc. v. Dukes,* 131 S.Ct. 2541, 2551 (2011).  The key consideration in assessing commonalty is

19  "not the raising of common questions–even in droves– but, rather, the capacity of a class-wide

20  proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Id.*

21        While Plaintiffs' Motion cites *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011)

22  and *Wal-Mart* for the proposition that "it is insufficient to merely allege any common question," (Cert.

23  Motion 14:1-2), that is exactly all that Plaintiffs have done.  They state, "This case involves the

24  challenge to system-wide policies and therefore, common questions of law and fact exist…" (Cert.

25  Motion 14:6-8).  Yet they haven't raised common policies regarding overtime, since the policy was to

26  record all time worked in the shop. In fact employees admit that their keys were taken away and that

27  they were never told to work off the clock. Plaintiffs' raising common questions as to how much off

28

1    the clock work might exist is not enough since "any competently crafted class complaint literally raises

2    common 'questions.'" *Wal-Mart, supra,* at 2551. Plaintiffs never address the requirement to have

3    common *answers*. See Table of Issues for Class Certification, Def. Brief, vii.

4         There may be a common question about whether the piece rate system adequately compensated

5    for overtime and rest breaks, but the answers will definitely be highly individualized.  As discussed

6    below, each worker's claim is personal and unique – the answer to the question of whether he has been

7    adequately compensated will depend on (1) whether each actually worked any overtime; (2) whether

8    the payment of flag rate hours times the flag rate of pay meets the DLSE-approved formula of shop

9    hours worked multiplied by two times the minimum wage; (3) whether each actually spent any time

10   waiting for cars to work on and how much; and (4) whether each actually spent time performing tasks

11   which did not have an associated piece rate or were not incident to the job, and how much time was

12   spent doing the "other" time that plaintiffs have not uniformly defined. These issues will have to be

13   explored looking at each worker's time clock records, piece rate records, and payroll records, for each

14   week.  Soto Dec. ¶28; Gutierrez Dec. ¶28; Davila Dec. ¶30; Bioc Dec. ¶26; Avendano Dec. ¶25.

15   Further, if the Court were to adopt Plaintiffs' argument that the sole way to determine what was owed

16   to an employee on any given day is Example 1 in the DLSE Manual, that example provides that you

17   must count the amount of flag rate hours that were completed during the first 8 hours of work, and then

18   count the amount of flat rate hours completed during the overtime calculation. This would require an

19   individual inquiry into each employees' productiveness on each and every day to determine what, if

20   anything, is owed beyond what was paid.

21         1.    There is No Commonality on the Rest Break Claim.

22              (a)    *Bluford* Did Not Change the IWC Wage Order.

23         Plaintiffs cite *Bluford v. Safeway Stores, Inc.*, 216 Cal.App.4th 864

24   (2013) to support their contention that a class action is appropriate to determine whether employees

25   were compensated for rest breaks under the piece rate system.  But the grant of certification in *Bluford*

26   was ***not*** a finding that all piece rate pay systems require separate payment for rest breaks.  Nor did

27   *Bluford* in any way change what the applicable wage order requires an employer to track.  Defendants

28

were **not** required to track rest periods: "…[A]uthorized rest periods need not be recorded." IWC Wage Order No. 9, ¶7(3). Defendants did not separately track payments to Plaintiffs for time spent resting because that is not something the wage order required to be tracked. *Bluford* did not change that.

In *Bluford*, the plaintiff was a truck driver who worked out of Safeway's distribution center. A collective bargaining agreement obligated Safeway to pay employees under an activity-based compensation system. The drivers in the putative class delivered goods from the distribution center to stores in Northern California and Nevada. They were paid using a combination of miles driven, a fixed rate for the number of pallets exchanged, and fractional hourly payments for certain administrative (non-driving) tasks. Drivers were paid not according to the hours it took to drive between locations but by miles driven. Plaintiff's motion to certify was partly based on the argument that rest breaks were not paid since the mileage system did not factor them in. The trial court denied class certification, stating that it would require an individualized inquiry as to whether each driver took his break. On appeal, the Court indicated the issue was not whether the drivers took their breaks, but rather whether a subclass could be certified based on Safeway's rest break policy. Safeway argued that the "mileage rates negotiated in the collective bargaining agreements included paid time for rest periods," or that the mileage rate had been increased to compensate for the rest breaks. The court certified a class because Safeway could not *average* the rest breaks with the time associated with mileage because mileage was not measured by the hour.

The instant case is very different. Plaintiffs were paid an hourly flag rate based upon their total flag rate hours, and on rare days when there was no flag time, they were paid an hourly rate for their hours in the shop. Long Dec., Ex. 19 (Nguyen Trial Tes. at 102:22-103:5, 138:10-139:10, 141:9-15, Ex. 227). In *Bluford*, the truck driver was expected to take his rest break during the time he was driving and was paid only for miles driven, not by the hour. In contrast, here there is no claim of an unlawful policy; further technicians were paid by the flag hour and received paid rest breaks in the same way that an hourly employee like a waitress in a restaurant would.

4849-0336-3364v4
KARGUELLO\15321004

1   Additionally, the answer to whether Plaintiffs were compensated for rest breaks also differs

2   based on whether they took rest breaks: Plaintiffs have testified inconsistently about breaks: some said

3   they always took breaks, some took one a day, and others chose to work through permitted breaks.

4   Long Dec., Exs.6 (Sandoval at 68:24-69:25 [used cell phone, got drinks]), 8 (Flores 83:5-23, 84:3-13

5   [took rest breaks, walked around building]), 10 (Lopez, Sr. at 72:18-73:14 [watched soccer games, got

6   drinks as needed]), 9 (Llamas at 24:17-21, 34:3-20 [took a few breaks to get a drink or a snack]), 4

7   (Calixto at 43:10-25, Ex.24, 45:20-21, 47:16-18), 6 (Sandoval at 58:3-59:16, 68:24-70:3, 92:16-93:6),

8   7 (Barrios at 53:12-55:25 [could have taken a break but never did]), 12 (Sifuentes at 28:10-30:9 [never

9   took a break but knew he was permitted]), 5 (Ramirez at 65:10-66:20,  [never took breaks but could

10  have), 11 (Lopez, Jr. at 26:16-25). Since the issue presented is not one of policy but rather what each

11  individual chose to do, there is no commonality.

12            (b)      *Bluford* Was Premised On Unlawful Averaging Not Present Here.

13            The *Bluford* court certified a class because Safeway could not *average*

14  the rest breaks with the time associated with mileage because mileage was not measured by the hour.

15  In doing so it relied in part on *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314 (2005), which Plaintiffs

16  also cite.  In *Armenta*, the defendant's business included maintaining standing wood utility poles for

17  major utility companies.  Employee hours were classified as productive or nonproductive based on

18  whether the hours were directly related to maintaining the poles. Employees claimed they were not

19  compensated for time spent traveling, loading equipment, doing paperwork, and maintaining company

20  vehicles.

21            The *Armenta* court, like the court in *Bluford,* was reviewing what an employer's obligations are

22  when there is an interplay between a collective bargaining agreement (which is not present here), a

23  California wage order, and FLSA. Employers of *Bluford* and *Armenta's* reliance on unlawful

24  collective bargaining agreements and use of averaging demonstrates that neither case controls in

25  determining certification.

26

27            (c)      After *Bluford, Vasquez* Denied Certification Of Piece Rate Workers'
                      Rest Break Claim; Saw Individualized Inquiry.

28

CASE NO.  CV 13-03230 EDL                           -13-
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

4849-0336-3364v4
KARGUELLO\15321004

Plaintiffs fail to cite a case decided subsequent to *Bluford*, which denied the certification of a class of piece rate workers asserting that they were not properly compensated for rest breaks.  In *Vasquez v. First Student, Inc.*, Case No. 2:14-CV-06760-ODW, 2015 U.S. Dist. LEXIS 30631 (C.D. Cal. March 12, 2015), bus drivers asserted that the piece rate system did not satisfy minimum wage requirements and did not pay for rest breaks.  The Court found that said issues could not "be resolved on a class-wide basis."  *Id.* at *17.  With respect to the rest break claim, the court stated, "… an individualized inquiry is also necessary to determine if Defendants in fact did not pay Drivers for rest breaks."  The court found it would have to determine whether any driver worked more than 3.5 hours on any given day (to be eligible for a rest break), whether the route the driver drove that day allowed him/her to take a paid rest break, and whether the driver received any paid time for time that he/she did not actually work that day on account of the guaranteed minimum paid hours, because the IWC Wage Order requires rest breaks for hours *actually worked*.  *Id.* at *18.  The court held that "individual issues will 'overwhelm' whatever common issues might exist" relating to Plaintiff's proposed classes.  The same is true here. Employees have testified that if there was no work they could go home.  Long Decl., Ex. 4, (Calixto at 44:23-45:2); Avendano Dec. ¶14; Davila Dec. ¶19; Bioc Dec. ¶13; Gomes Dec. ¶15; Hernandez Dec. ¶10; Soto Dec. ¶15. So whether an employee was actually at work not working at the direction of the employer or not will require an individual inquiry, which will then determine if time is owed for a break.

### 2.   No Commonality on "Waiting" or "Administrative" Time Claims.

Plaintiffs' attempt to rely on *Gonzalez v. Downtown LA Motors, Inc.* (2013) 215 Cal.App.4th 36 is misplaced for the proposition that there is common proof that class members are owed for administrative time.  *Gonzalez* did not involve auto body repair hourly piece rate workers like we have here, but rather auto mechanics paid by the "unit."  They were paid for the time actually spent doing each repair – not an industry-standard number of hours assigned to a particular repair. For example, if the flag hours associated with a repair were 5.5 hours, and the employee did the work in 3.5 hours, the *Gonzalez* employee was only paid 3.5 hours, whereas here they were paid 5.5 hours for 3.5 hours of work.

1   Plaintiffs' own evidence further distinguishes this case from *Gonzalez*. First, in *Gonzalez*,
2   there was a written rule in the employee handbook that workers were required to work an 8-hour shift
3   and had to remain on the premises even when there was no piece rate work to do, which written rule
4   was confirmed through testimony of two managers. In contrast, Plaintiffs here have presented no
5   evidence that there was any requirement that they stay a full 8 hours when there was no piece rate
6   work; most said they could leave. Long Dec., Exs. 6 (Sandoval at 46:16-47:2, 76:1-12), 8 (Flores at
7   65:7-12), 4 (Calixto at 44:23-45:2). Eddy Sifuentes admitted there was no rule that he remain at work;
8   he further testified that if there were time clock records showing that he clocked out earlier than 8
9   hours, they would be more reliable than his memory. Long Dec. Ex. 20 (Sifuentes Trial Tes. at 133:13-
10  22). Even Plaintiff Ramirez admitted that he could have asked to leave early if his work was
11  completed and that permission probably would have been granted. Long Dec. Ex. 21 (Ramirez Trial
12  Tes. at 165:24-166:6). Hugo Gonzalez confirmed that many weeks he worked just 2-3 days per week
13  and that while he did have to tell someone he was leaving, he was allowed to leave. Long Dec. Ex. 22
14  (Gonzalez Trial Tes. at 81:24-82:8, 83:17-22). Oscar Davila also testified that when he finishes early
15  he leaves. Davila Dec. ¶19. Clearly, the facts are divergent from *Gonzalez*.

16  Second, in *Gonzalez*, when workers did not have piece rate work available, they were required
17  to perform tasks which were not incident to repairs, such as driving from the shop to customer
18  locations and back to retrieve or deliver vehicles or attending online training sessions. In the instant
19  case, Plaintiffs have not presented any evidence that they were required to do any "administrative"
20  work which was not incident to the piece. Instead, they claim had to clean up their work areas (which
21  consists of tossing paper or plastic into a bin and wiping down their tools between jobs), which was
22  incident to the repair job and took very little time and attend training. In regards to training, all of the
23  plaintiffs admit that they were paid hourly for their time attending training. Long Dec. Ex. 8 (Flores at
24  57:25-58:8), 10 (Lopez, Sr. at 37:13-24), 9 (Llamas at 12:2-23), 7 (Barrios at 36:16-21), 5 (Ramirez at
25  44:9-12 [does not remember if he attended trainings]). When pressed as to what "other" work they had
26  to do, none could state with any clarity. Manuel Llamas stated his only work was to work on cars.
27  Long Dec. Exs. 9 (Llamas at 49:19-50:2) and 5 (Ramirez at 44:13-19).

28

CASE NO. CV 13-03230 EDL

-15-

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

1    Third, in *Gonzalez*, the employer averaged the shop work hours against the unit hours for each

2    job to arrive at the employees pay. By contrast, Defendant employees' pay was not averaged; rather

3    employees were paid at their hourly rate for each hour of work performed. Long Dec. Exs. 6 (Sandoval

4    at 79:9-80:8, 82:8-83:13, Exs. 1 and 7), 8 (Flores at 40:19-41:22), 12 (Sifuentes at 60:9-13), 10 (Lopez,

5    Sr. at 59:25-60:10), 9 (Llamas at 20:19-21:12), 7 (Barrios at 26:9-28:1), and 4 (Calixto at 29:4-8).

6
               (a)    Plaintiffs Cannot Show Common Answers Regarding Waiting Time
7                     And Other Work; the Claims are Individual and Cannot be Measured.

8                     Plaintiffs in this lawsuit contend that the time they spent cleaning up

9    their work area, waiting for a car to be assigned or attending a meeting should be time that they are

10   additionally compensated for because in their opinion this is not included in the flag rate hours

11   assigned to a job. This opinion directly contradicts Mr. Krause, who indicates that the flag rate hours

12   are derived from efficiency studies based on the average worker using average tools including all

13   reasonable rest times and clean up times. Long Decl., Ex. 26 (Krause Trial Tes. at 1812:13-1813:4;

14   1819:12-1822:22). Regardless of the facts that directly contradict their theory, there are no records

15   demonstrating how much time, if any, any particular employee spent "waiting." Defendants were not

16   required to keep records of "administrative time." Labor Code §226(a)(3) merely obligates employers

17   to show the applicable piece rate (dollar amount) and total piece-rate earnings (total share of piece)

18   over an entire pay period. This is consistent with the DLSE's position:

19        You are not required to pay separately for time spent in pick-up or clean-up or for
          company meetings at which attendance is compulsory. However, time spent in all such
20        activities is considered work time and must be paid for at a piece rate which results in
          total compensation of not less than the minimum wage plus overtime if applicable, as
21        described above. DLSE Bulletin 84-3. RJN, Ex. K.

22        Each defendant entity employs a production manager who assigns work. Workers are not

23   assigned a single car at a time. Rather, each worker's bay can accommodate at least two cars, and

24   workers generally have 5 cars assigned to them at a time, so that they can move between vehicles if

25   one is being painted, needs a part or requires further authorization. While each plaintiff acknowledges

26   the work flow process, their declarations conclude they had no work at times. However, upon

27   questioning at deposition, their "waiting" times were far from routine and consistent. First, none are

28

able to identify how much time they had to wait for work. Second, it appeared that any wait time was an exceptional circumstance. For example, Francisco Lopez said in his 10 years of employment he had to wait maybe 10 times for work and he couldn't say how long he waited. Long Dec. Exs. 10 (Lopez, Sr. at 22:4-15, 28:11-29:24), 11 (Lopez, Jr. at 39:10-17). Further, Eddy Sifuentes testified that he too was always busy and he couldn't really remember having down time. Long Dec. Ex. 12 (Sifuentes at 18:20-19:3, 22:17-23:10). By contrast, Manual Llamas testified he had to often wait for work 2-3 hours a day, but then contradicted himself by stating he would work Saturdays because he was so busy. Long Dec. Ex. 9 (Llamas at 25:1-19). Shop employees are busy on a regular basis and enjoy a constant flow of work. Long Dec. Exs. 6 (Sandoval at 44:1-22, 51:6-9), 10 (Lopez, Sr. at 26:1-10), 4 (Calixto at 47:22-48:12), 11 (Lopez Jr. at 28:5-17), 9 (Llamas at 13:6-17); Avendano Dec. ¶6; Bioc Dec. ¶7; Davila Dec. ¶7; Fuentes Dec. ¶6; Gomes Dec. ¶6; Gutierrez Dec., ¶6; Hernandez Dec. ¶6; Mata Dec. ¶6; Mendieta Dec. ¶5; Prado Dec. ¶6; Soto Dec. ¶5. Since Defendants didn't track actual repair time, if the employee completed a 12 hour job in 7 hours, there is nothing to reflect that 7 hours.  Long Dec. Exs. 6 (Sandoval at 56:25-57:2, 79:17-80:11), 8 (Flores at 67:17-68:14), 12 (Sifuentes at 22:17-23:10), 7 (Barrios at 34:22-35:4), 5 (Ramirez at 61:13-63:5).

Courts routinely deny motions for class certification when substantial evidence is lacking. *Dailey v. Sears, Roebuck & Co.*, 214 Cal.App.4th 974, 989 (2013). Here, Plaintiffs concede they have no evidence of the amount of time that they spent "waiting" for work. Thus there is no common answer as to what a particular employee did waiting and it is impossible to determine if there is in fact uncompensated time that an individual employee may be owed.

> (b)   Whether An Employee Had Uncompensated Administrative Time Is An Individual Inquiry.

Plaintiffs' reliance on *Bibo v. Federal Express, Inc.*, No. C-07-2505-TEH, 2009 WL 1068880 (N.D. Cal. April 21, 2009), to establish that common questions exist about money owed for administrative time, is misplaced.  *Bibo* involved a class of FedEx employees who claimed they were not being paid in accordance with state law since FedEx relied on the federal Portal-to-Portal Act requirements.  Further, the *Bibo* court held the *de minimis* rule does apply "where there

1    are uncertain and indefinite periods of time involved of a few seconds' or minutes' duration, and where

2    the failure to count such time is due to considerations justified by industrial realities" (citing DLSE

3    Manual §47.2.1)[7].   Here, none of the Plaintiffs have been able to articulate what constitutes

4    "administrative" time, or whether such "administrative time" was what resulted in overtime.   Long

5    Dec. Ex. 24 (Albright Dec. Ex. B showing de minimus overtime).

6           While it is true that Defendants required employees to go to trainings, employees universally

7    confirmed they were paid at their hourly rate for all such time spent attending training relating to their

8    job. Long Dec. Exs. 8 (Flores at 57:25-58:8), 10 (Lopez, Sr. at 37:13-24), 9 (Llamas at 12:2-23), 7

9    (Barrios at 36:16-20); Avendano Dec. ¶13; Davila Dec. ¶18; Gomes Dec.¶14; Gutierrez Dec. ¶11;

10   Mata Dec. ¶11; Prado Dec. ¶11; Soto Dec. ¶14.   Defendants did not have a policy of requiring

11   employees to attend daily meetings.  Certain employees have testified in declarations submitted in

12   support of class certification that they had "other" time they spent attending meetings or otherwise

13   doing non-piece rate work.  However, no employee has quantified any amount of time spent going to

14   meetings that were not paid at the hourly rate of pay, nor has any employee been able to identify what

15   "other" work they did other than repairing cars. For example, Manual Llamas was asked about what

16   else he did at work other than car repair and he said nothing. Long Dec. Ex. 9 (Llamas at 49:19-50:2).

17   Therefore, absent evidence of each defendant requiring employees to attend regular meetings or do

18   other work, the issue of whether an employee attended meetings, with what frequency and duration as

19   well as the nature of what other work they performed will require an individual analysis.

20
             (c)      Defendant Entities Did Not Have an Off-the-Clock Policy; Therefore
21                    Certification is Not Appropriate.

22           Plaintiffs' theory with respect to overtime is that the piece rate system

23   did not properly compensate workers for overtime.  Plaintiffs frame the issue as: "Does Autovest's,

24   Serramonte's, and M1's failure to method [sic] of calculating overtime wages owed to piece rate

25   workers run afoul of California labor law."   In order to show facts demonstrating that no individualized

---

26   [7] Plaintiffs' citation to *Weigle v. FedEx Ground Package System, Inc.* , No. 06cv13302008, WL 410691 (S.D.Cal.
     2008) is also improper since that case was subsequently decertified in 2010 based on a change in law, and ultimately
27   dismissed based on the decisions establishing precedent. *Weigle v. FedEx Ground Package Sys.,* 06-CV-1330 JLS,
     2010 U.S. Dist. LEXIS 120475 (S.D. Cal. Nov. 15, 2010).

28

1    inquiry would be required to decide this question, they refer the Court to Section II.F of their brief.

2    However, there is no II.F.

3            Plaintiffs argue in their recitation of facts that Defendants' method of ensuring that employees

4    were paid for each hour worked at their hourly rate of pay is unlawful, and cite an incomplete version

5    of the DLSE Manual. Cert. Mot. 7:25-8:17. Defendants urge the Court to review Plaintiffs' Request

6    for Judicial Notice and reject it. The DLSE Manual is over 300 pages. Section 2-2 indicates that

7    various forms of piece rate calculations exist, and recognizes the book rate as an accepted method.

8    RJN, Ex. N. (DLSE Manual § 2.2).

9            Section 49-1 of the DLSE Manual recognizes that piece rate plans can be executed in various

10   ways and still be compliant with the law, but the DLSE Manual does not attempt to state an exhaustive

11   list of those methods. Plaintiffs' presentation of only one method–which requires calculating how

12   many "pieces" were completed during the first 8 hours of work, and how many "pieces" were

13   completed during the overtime period, suggests to the Court that there is but one way and that

14   Defendants' piece rate system did not comply with it. This is false. Further, pursuant to Executive

15   Order S-2-03, the DLSE opinion letters and the DLSE Manual are currently under review to determine

16   their legal force and effect and to ensure compliance with the requirements of the Administrative

17   Procedures Act. DLSE opinion letters offer advice and guidance on the facts of specific cases only.

18   RJN, Ex. P.

19           Plaintiffs offer no means by which Defendants could calculate now, based on the records in

20   this case, how many flag hours were completed in the first 8 hours the employees worked or how

21   many flag hours were completed during the overtime period. Plaintiffs' own declarations state that

22   they did not track the hours they spent working on a particular vehicle. Calixto Dec. ¶15, Llamas Dec.

23   ¶11, Flores Dec. ¶12, and Lopez, Sr. Dec. ¶17. It is impossible to tell when an employee worked on a

24   car, whether it was in the first 8 hours of a workday or later, whether the flag hours associated with the

25   repair were completed in one workday or spanned several days; the variances are endless. Further, the

26   proposed formula cited by Plaintiffs would apply only to body men, and not painters who worked in

27   teams and were paid a split of the team's total flag rate hours each week, which is also recognized as a

28

4849-0336-3364v4
KARGUELLO\15321004

1   legitimate pay method by the DLSE. RJN, Ex. N. (DLSE Manual § 49.2.2). Plaintiffs' proposal as to

2   how to calculate liability, coupled with the diverse methods by which the piece rate may be calculated,

3   demonstrates the unmanageability of these issues on a class-wide basis; therefore, class certification is

4   not appropriate.

5   　　　Here, despite time records demonstrating overtime, Plaintiffs claim they had additional hours

6   beyond that reflected in their time cards. They have confirmed they were never told to work off the

7   clock, but they simply ignored the rule. Long Dec. Exs. 12(Sifuentes at 27:7-10), 6 (Sandoval at 56:25-

8   57:2, 79:17-80:11), 8 (Flores at 67:17-68:14), 7 (Barrios at 32:19-25), 5 (Ramirez at 61:13-63:5).

9   　　　Plaintiffs rely heavily on the deposition testimony of Alex Astts, Director of Operations to

10  assert the pay practice was unlawful. However, Mr. Astts was very clear during his deposition that he

11  was not personally familiar with how the auditing for the piece rate method of pay was done, but that

12  he reviewed it for purposes of preparing for his deposition as Person Most Knowledgeable. Astts Dec.

13  ¶ 23. He deferred to Emily Nguyen, the former Controller for the corporate defendants. Ms. Nguyen,

14  who is no longer with Autowest, testified previously at deposition and during trial in *Juarez*. She

15  again confirmed during a third party deposition in this case that the piece rate method was designed to

16  ensure that each employee was being paid for all hours worked at his hourly rate of pay. She described

17  how she performed a calculation to ensure that the employees' pay based on flag hours met or

18  exceeded what they would have earned had they been paid hourly and received overtime. Long Dec.

19  Ex. 27, 18 (Nguyen 2015 at 72:13-73:8, 76:16-20, 78:22-79:25). The fact that Plaintiffs omit Mr.

20  Astts' deferral to Ms. Nguyen, and ignore Ms. Nguyen's testimony completely in an effort to shoehorn

21  certification is an attempt to obscure evidence which demonstrates that Defendants' piece rate practice

22  was lawful.

23  　　　Plaintiffs fail to show a common core of facts that affects all proposed class members with

24  respect to working off-the-clock. *See Alonzo v. Maximus, Inc.,* 275 F.R.D 513, 522-523 (2011) (Off-

25  the-clock claim did not meet commonality requirements where evidence only showed a practice in a

26  single location). Plaintiffs assert that they did not regularly use a time clock to track the hours they

27  spent working in the shop, but often worked before and after their regularly-scheduled shift, and that

28

their piece rate hours did not fully compensate them for this time.  As discussed herein, these off-the-clock claims are routinely denied as inappropriate for class certification given the inability to measure damages.  Where an individualized assessment is necessary to ascertain whether in fact any employees worked "off-the-clock," the claim is not susceptible to common proof.  Further, Plaintiffs have failed to point to any reliable testimony stating that Defendants knew or should have known if any work was being done off the clock, as required before overtime can be awarded.[8]

Collective actions are routinely denied in off-the-clock claims.  Courts have found claims of off-the-clock work "too individualized to warrant collective action treatment,"[9] and that questions of fact would likely differ among class members because each had worked in different locations with different supervisors.  *Diaz v. Electronics Boutique of America, Inc.*, No. 04-CV-0840E, 2005 WL 2654270 at *1 (W.D.N.Y. 2005).  See also *West v. Border Foods, Inc.*, No. 05-2525, 2006 WL 1892527, at *9-10 (D. Minn. July 10, 2006) (conditional certification denied because proposed class members were employed at different store locations, were deprived of overtime pay by varying means, and claimed different numbers of unpaid hours per week.  The absence of widespread violations, along with the individualized nature of those violations actually alleged, precluded a finding that conditional certification was appropriate).  Similarly, in *Brothers v. Portage National Bank*, the court denied collective action certification where employees claimed they were required to work after clocking out for the day, holding that the plaintiff had not presented legitimate evidence of a single policy or plan that "permeated" all of the employer's offices.  *Brothers v. Portage Nat'l Bank*, No. 3:05-94, 2007 WL 965835, at *7 (W.D. Pa. Mar. 29, 2007).  Here, the evidence presented is that there was a required time clock and that there are time clock records. In 2009 or 2010 the employees' keys to the shop were

---

[8] Employer must know or should have known that employee was working overtime or report the overtime hours. Either way, the employee bears some responsibility for the proper implementation of overtime. *White v. Baptist Meml. Health Care Corp.* 699 F.3d 869(6th Cir. 2012).  Where an employer has no knowledge that an employee is engaging in overtime work and employee fails to notify the employer or deliberately prevents his employer from acquiring knowledge of the overtime work, the employer's failure to pay overtime hours is not a violation of the FLSA. *Forrester v. Roth's I.G.A. Foodliner, Inc*, 646 F.2d 413, 414 (9th Cir. 1981).

[9] *Forrand v. Federal Express Corp.*, Case No. 2:08-cv-01360-DSF-PJW (C.D. Cal., Apr. 25, 2013).  Citing *Comcast*, the Central District declined to certify a class of hourly workers in an off-the-clock case.  The district court concluded that the plaintiffs could not meet *Comcast's* requirement to develop a method to measure damages and tie each class member's recovery to that theory in a reliable manner that could be managed on a class-wide basis.  See also *Washington v. Joe's Crab Shack*, 271 F.R.D. 629 (2010) (certification denied where off-the-clock claim would require individualized testimony from employees).

CASE NO.  CV 13-03230 EDL                                -21-
DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

4849-0336-3364v4
KARGUELLO\15321004

1    taken away and they could only work when the shop was open. Long Dec. Ex. 10(Lopez, Sr. at 64:10-

2    21). Clearly there was no policy that employees work without reporting their time.

3            It is also appropriate to deny conditional certification where fairness and procedural

4    considerations would prohibit it.  *Basco v. Wal-Mart Stores, Inc*., No. CIV. A. 00-3184, 2004 WL

5    1497709 (E.D. La. July 2, 2004) at *8.  In *Diaz v. Electronics Boutique of America, Inc.*, No. 04-CV-

6    0840E(Sr), 2005 WL 2654270 (W.D.N.Y. 2005) at *5, the court found that where different purported

7    class members' circumstances included different managers, locations, and hours, conditional

8    certification was not appropriate, because the court would have to examine when each plaintiff was

9    scheduled to work, when they actually worked, whether they were paid for that time, and whether their

10   time was altered.  Here, the employees have varying accounts of their hours worked and their

11   practices. For example, one employee indicated he had a key for one year that enabled him to work

12   whatever hours he wanted without reporting them (*Id.*), another indicated that he was always slow and

13   worked the hours the shop was open (Long Dec. Ex. 9 (Llamas at 14:2-20), another indicated he would

14   squeeze through a back door of the shop to get out—indicating that no one knew he was working Long

15   Dec. Ex. 4 (Calixto at 65:12-67:1). Not one Plaintiff testified that he was required to work hours

16   without reporting them to the company. Long Dec. Ex. 9 (Llamas at 32:9-22).  There are 3 distinct

17   entities whose respective shop managers separately managed and decided how to implement and

18   execute the piece rate system and how their employees would be compensated.  The testimony from

19   putative class members indicates that there are vast differences in hours worked, and in the amount and

20   frequency of working "off the clock."  Plaintiffs offer no method by which common proof or answers

21   could be obtained absent a series of mini-trials regarding the additional hours of overtime each

22   employee had beyond what is shown in the time records.

23           3.    The Alleged Rest Break Violations Do Not Meet Commonality Standard

24                 Plaintiffs' claim regarding rest breaks is not based on the lawfulness of the

25   policy, but rather on their test theory that because the hours paid to employees were piece rate hours,

26   the employees were not properly compensated for breaks. However, the facts and the law do not

27   support this assertion. As an initial matter, Plaintiffs take a snippet from the declaration of Mr. Astts to

28

1    assert that employees were not paid for rest breaks. That is misleading and false. Mr. Astts testified

2    that he was not aware exactly of how the pay method worked but that he didn't believe that piece rate

3    workers were paid an "additional" 10 minutes for each 3.5 hours of work. Long Dec. Ex. 16; Astts

4    Dec. Ex. ___. Further, Ms. Nguyen testified in *Juarez* that employees were paid for rest breaks. Long

5    Dec. Ex. 19 (Nyuegen Trial Tes. at 42:18-43:25.) Once again, the fact that Plaintiffs would obscure

6    from the Court all of the testimony of the former Controller who is in charge of payroll demonstrates

7    they are trying to force certification where it is not appropriate.

8

             4.       The Claim for Inaccurate Wage Statements Requires Individual Inquiry as to

9                   Specific Injuries.

10           It is undisputed that each week each defendant entity provided each employee

11   with a sheet summarizing all piece rate hours for which they would be compensated, a document

12   showing them all hours they had reported as being worked, and a pay check. See RJN, Ex. T, p. 2

13   (stating that the purpose of Section 226 "is to provide transparency as to the calculation of wages" and

14   "to allow employees to maintain their own records of wages earned, deductions, and pay received").

15   Thus, Section 226 only penalizes employers who do not accurately describe the monies being paid; it

16   does not prescribe a penalty for omission of a description of monies not being paid. Here, Plaintiffs

17   concede that the wage statements received accurately displayed the Section 226(a) information with

18   respect to what was paid to them, the hours reported having worked and piece rate hours.

19           Therefore, even if Plaintiffs could establish that each alleged wage statement violated Section

20   226(a) (which they cannot), each would still need to establish that he or she suffered a concrete

21   "injury" as a result. *See Villacres v. ABM Industries, Inc.*, 384 Fed. Appx. 626, 627-28 (9th Cir. 2010)

22   [actual injury is a prerequisite for a plaintiff to recover any penalties under Section 226(e); *Elliot v.*

23   *Spherion Pacific Work, LLC*, (C.D. Cal. 2008) 572 F. Supp. 2d 1169, 1180-81, *aff'd* 368 Fed. Appx.

24   761 (9th Cir. 2011) (granting summary judgment to employer because plaintiff failed to show injury

25   resulting from defective wage statements; holding that proof of liability requires proof that the plaintiff

26   was injured); *Jasper v. C.R. England, Inc.*, No. CV 08-5266-GW, 2009 U.S. Dist. LEXIS 34802, *15

27   (C.D. Cal. Mar. 30, 2009) (plaintiff must demonstrate both intentional non-compliance and a resulting

28

CASE NO. CV 13-03230 EDL            -23-

4849-0336-3364v4
KARGUELLO\15321004      DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

1    injury in order to recover under Section 226(e)); *Velasquez v. Khan*, No. CIV. S 01-0246 MCE DAD,

2    2005 U.S. Dist. LEXIS 34681, at *10 (E.D. Cal. Jul. 11, 2005) (after a bench trial, denying plaintiffs'

3    request for damages under Section 226(e) because plaintiffs failed to show injury).

4         As Defendants' practices complied with the law it will be upon each employee to show how he

5    was injured by the documentation he received. In the mere 6 lines Plaintiffs' motion devotes to this

6    issue, Plaintiffs offer no common method of proof that may be utilized at trial.

7    C.    Plaintiffs Have Not Shown The Typicality Required For Class Certification.

8         The typicality requirement of Rule 23(a)(3) is very similar to the standard for

9    commonality: "representative claims are 'typical' if they are reasonably co-extensive with those of

10   absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corporation*, 150

11   F.3d 1011, 1020 (2011). "The test of typicality is whether other members have the same or similar

12   injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether

13   other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*,

14   976 F.2d 497, 508 (9th Cir. 1992). Here, despite having four Plaintiffs, the claims are not typical.

15        Plaintiffs' proposed classes are structured to include all piece rate workers at the respective

16   corporations during a certain period of time. Body men, painters, preparers and polishers were all paid

17   on the piece rate basis for some duration at each body shop during the relevant time period. However,

18   each Plaintiff's or proposed class member's claims are not typical of the other.

19   1.    Body Men Were Paid Differently Than Paint Team Members.

20        Body men were paid differently than painters, preparers and polishers. Body

21   men typically worked alone (though Salvador Flores had an assistant, which is discussed in more detail

22   below). They were paid a sum which represented the total flag hours they completed in a week,

23   multiplied by their flag rate (usually between $19-$22/hour). They did not have to split or divide their

24   flag rate hours with anyone. Contrast the payment method for body men with that for the painters,

25   preparers and polishers, which was called the "Pie System." These men worked on teams. The total

26   flag rate hours completed by the entire team for the week were compiled and multiplied by the

27   painter's flag rate. That dollar amount was then split, according to percentages decided by the painter,

28

CASE NO. CV 13-03230 EDL                              -24-

4849-0336-3364v4
KARGUELLO\15321004                 DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

among the various team members. Long Decl. Ex. 24 (Rich Albright Dec. ¶4). For example, Rafael

Sandoval's percentage varied from 10-20 percent based upon his skill level, the shop that he worked at,

the number of members on his team in a given week. Long Dec. Ex. 6 (Sandoval at 12:16-14:17). This

is appropriate under DLSE Manual § 49.2.3. RJN, Ex. N.

2.     Variations Exist in Application of Piece Rate System.

Differences exist in the way various body men were paid, which further

demonstrate an absence of typicality. Body man Francisco Lopez, Sr. is unique in that he did not work

alone – he was assisted by his son Francisco Javier Lopez, Jr. from time to time. Francisco Lopez, Sr.

would split his flag rate hours to give his son a portion of them, there were other father/son teams.

Long Dec. Exs. 10 (Lopez, Sr. at 73:18-74:10) and 11(Lopez, Jr. at 11:18-13:12, 29:17-30:19).

3.     Different Paint Teams Were Compensated Differently.

With respect to the paint teams, there are significant differences in how various

paint teams are compensated. At some shops, the paint team consists of a painter, 1-2 preppers, and a

polisher, each of whom participates in the split. Bioc Dec. ¶9; Davila Dec. ¶8. In other situations, the

polisher is not paid a split of the flag hours–only the painter and the prepper(s). In those situations, the

polisher is paid on an hourly basis. Soto Dec. ¶8. Plaintiff Sandoval declared, "I worked in the San

Jose shop…At Concord the pay system was the same piece rate except that there we did not have to

pay for the polisher from our money…" Sandoval Dec. ¶11. In a third set of circumstances,

sometimes the painter is paid on the flag rate basis but the preparers are paid on an hourly basis.

Avendano Dec. ¶8.

Also, at some shops, the percentage split among the paint team remained consistent from week

to week (Mendieta Dec. ¶9) while at other shops, the percentage would change from week to week

depending how much of the work he actually did or how complicated the jobs were. Sandoval Dec.

¶5; Davila Dec. ¶14; Bioc Dec. ¶9.

4.     Not All Putative Class Members were Piece Rate Workers for the Entire Class
Period.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL

1    Many individuals who were paid on the piece rate system at first were paid by

2 the hour, often during the relevant period.  Avendano Dec. ¶3; Bioc Dec. ¶3; Gomes Dec. ¶3; Mata

3 Dec. ¶ 3. It is impossible to state with certainty that each person included in Plaintiffs' sweeping class

4 definition was paid on the piece rate system for the entirety of the relevant class period, without

5 conducting an individual inquiry as to that fact.

6    5.    The Detail "Deduction" Was Not A Policy Across The Putative Class.

7    The claim for deduction from the flag rate hours for detail is not relevant to

8 every shop or every potential class member.  While some body men have testified that they had to give

9 a portion of their flag rate hours to the detailer since they themselves did not perform that work

10 (Fuentes Dec., ¶ 7), others testified that they did ***not*** have to give a portion of the flag rate hours to the

11 detailer; the detailer was paid separately.  Gutierrez Dec. ¶8; Mata Dec. ¶7; Hernandez Dec. ¶3

12 (wherein he testifies he was first hired at Serramonte as a detailer and was paid by the hour).  Further,

13 the detail "deduction" applies only to certain body men, and not to any of the painters, preparers or

14 polishers.  Bioc Dec. ¶8.  Therefore, a body man's claims for deduction for detail would not be typical

15 of other putative class members' claims.

16    6.    The Uniform Deduction Did Not Affect All Putative Class Members.

17    Finally, the clam for a deduction from pay for cleaning of a uniform is unique to

18 certain shops.  Again, the testimony has been that this did not take place at every shop for the entire

19 proposed class period, and that where it does take place, it is not consistently done from week to week.

20 Fuentes Dec. ¶2; Hernandez Dec. ¶22.

21    D.    Plaintiffs' Counsel Do Not Adequately Represent The Class.

22    While counsel asserts in conclusory fashion that they are suitable to act as class

23 counsel, they ignore their blatant conflict of interest, which the Court previously indicated it would

24 consider at the certification stage.  Defendants respectfully refer the Court to the arguments regarding

25 class counsel's conflict contained in the concurrently-filed Motion to Disqualify Class Counsel, and

26 assert that this conflict prohibits adequate representation.

27

28

1    **VI.      THIS CASE CANNOT BE CERTIFIED AS A CLASS UNDER RULE 23(B)(2).**

2           The Supreme Court in *Wal-Mart Stores, Inc. v. Dukes, supra*, 131 S.Ct. 2541, held that Rule

3    23(b)(2) applies only when "a single injunctive or declaratory judgment would provide relief to each

4    members of the class," not when individuals seek an individual award of monetary damages.  *Id.* at

5    2557. By its very nature, the recovery of money is central to this litigation, making a claims under Rule

6    23(b)(2) improper.  A class may be certified under Rule 23(b)(3) where questions of law or fact

7    common to members of the class predominate and a class action is superior to other available methods

8    for fairly and efficiently adjudicating the controversy.  Plaintiffs have not satisfied that burden with

9    respect to any of their claims.

10          A.      Individual Issues Predominate All Of Plaintiffs' Claims.

11              "Predominance "tests whether proposed classes are sufficiently cohesive to warrant

12   adjudication by representation," a standard "far more demanding" than the commonality requirement

13   for Rule 23(a).  *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).  "When common

14   questions present a significant aspect of the case and they can be resolved for all members of the class

15   in a single adjudication, there is clear justification for handling the dispute on a representative rather

16   than on an individual basis."  *Local Jt. Exec. Bd. Culinary/Bartender Tr. Fund v. Las Vegas Sands,*

17   *Inc.* 244 F.3d 1152, 1162 (9th Cir. 2001).  As discussed above in detail, Plaintiffs cannot meet this

18   requirement because individual inquiries pervade each of their claims: from time spent working "off

19   the clock," to time spent on "administrative" or non-repair tasks or waiting for vehicles, to whether

20   they each suffered an injury as a result of an inaccurate wage statement.

21          B.      Plaintiffs' Reliance On Improper Sampling Demonstrates That A Class Action Is Not
             The Superior Method For Adjudicating This Claim.

22

23              "Last, but certainly not least, the district court must find that a class action is superior to

24   other methods of adjudication." *Valentino v. Carter-Wallace, Inc.*, *supra,* 97 F.3d 1227, 1234.

25   Pursuant to Rule 23(b)(3), certification is appropriate only if the Court finds "that a class action is

26   superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R.

27   Civ. Proc. 23(b)(3).  Specific factors that the court may consider when determining whether class

28

certification is superior include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. *Id.*

The fourth consideration should persuade the Court that class treatment is not a superior means of adjudicating Plaintiffs' claims. A class action addressing the varied individual factual issues raised by Plaintiffs is likely to be unmanageable. Even where there is a common nucleus of fact regarding a defendant's conduct, "[i]f each class member has to litigate numerous and substantial separate issues to establish his or her right to recover individually, a class action is not 'superior.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1192 (9th Cir. 2001). While Plaintiffs did not propound any class discovery during the pendency of this action, utilizing the class records in *Juarez* they estimate the class is likely close to 170 potential class members. Cert. at 13:17-20. These class members are spread among four locations throughout Northern California.  Even more problematic is that Plaintiffs have asserted 8 separate and distinct claims, based on no fewer than a dozen statutes and wage orders.  Most putative class members are only eligible for some of the potential claims; none are eligible for all. To adjudicate all claims and determine which putative class members would be eligible for which claims is a logistical nightmare.  Some have asserted claims in the past and are prohibited from getting a second adjudication.  Without a viable method of common proof for liability evaluating the numerous claims, the Court will be mired in countless "mini-trials" regarding the understanding of the respective policies, practices and expectations of each corporate defendant and the applicability of each to the individual class members. The difficulties in managing such a wide-ranging factual inquiry should persuade the Court that class treatment is not a superior method for resolution.

      1.     Sampling Is Not Appropriate, and the Inadmissible Attorney Declarations Offer No Proposal for Management of the Class Action.

The declaration of Plaintiffs' attorney Stan Mallison unequivocally states that Plaintiffs seek to rely on a "'research model' approach to wage and hour class action litigation."

1    Mallison Dec. ¶5. While he contends that the "success of this model [has been] exemplified" in

2    approximately eighteen cases he has been involved in (Mallison Dec., ¶6) he omits that they pre-date

3    *Duran v. U.S. Bank Nat'l Assn*, 203 Cal.App.4th 212 (2012), *rhg denied*, 2012 Cal. App. LEXIS 265

4    (Cal. App. 1st Dist. Mar. 6, 2012) and that at least 12 of the cases were resolved prior to a motion for

5    class certification being filed. Long Dec. ¶36-40.  Mr. Mallison's testimony is inadmissible. Fed. R.

6    Evid. §402 ["Irrelevant evidence is not admissible"]; 2-402 Weinstein's Federal Evidence § 402.02

7    ["The rule … ensure[s] that nothing is received into evidence that is not logically probative of some

8    matter to be proved"].[10]   The fact that Plaintiffs' counsel seeks to employ a "research model" is

9    significant because the court in *Duran* found that it was reversible error by the trial court to "resort[] to

10   an unproven statistical sampling method[]… that (improperly) denied [defendant] the right to properly

11   defend the claims against it." *Duran, supra*, 203 Cal.App.4th at p. 275.

12                    2.    <u>Plaintiffs Make No Proposals about Managing the Numerous Issues.</u>

13                    Apart from vague assertions that there are "no inherent difficulties in managing

14   this case," Plaintiffs offer the Court no real guidance on how to effectively manage the trial of this case

15   as a class action given the number of individual inquiries and number of claims at issue.   The

16   California Supreme Court has confirmed that a plaintiff has the burden to prove that trial on a class

17   basis would be manageable, and that "counsel's assurances of manageability" are insufficient to

18   sustain that burden. *Wash. Mut. Bank v. Superior Court*, 24 Cal.4th 906, 924 (2001); *Hernandez v.*

19   *Chipotle Mexican Grill*, 189 Cal. App. 4th 751, 766 (2010) ("It is not sufficient ... simply to mention a

20   procedural tool; the party seeking class certification must explain how the procedure will effectively

21   manage the issues in question...." citing *Dunbar v. Albertson's Inc.*, 141 Cal. App. 4th 1422, 1432

22   (2006). Here, there are substantial individual issues relating to both liability and damages which

23   require an individual analysis of each employee, his shop records, his piece rate records, and his

24   payroll records, to confirm or deny the accuracy of the Plaintiffs' claims.  Plaintiffs have not borne

25   their burden of showing manageability as a class action.

26   _____

27   [10]  Mr. Sutton's declaration is equally inadmissible under FRE402. Further, while he claims that Exhibit A showing the names of employees who worked in 2009 and 2010 is a proper summary under FRE 1006, it actually doesn't compile any

28   data regarding the claims other than proposed putative class members, which is a guess, as there is no foundation laid on how the names were obtained or from what admissible source they relied upon.

VII. **THIS CLAIM IS NOT APPROPRIATE FOR FLSA §216(B) CONDITIONAL CERTIFICATION.**

Plaintiffs' motion fails to establish that this matter is appropriate for collective-action certification. Typically the initial burden to certify a collective action is lenient, but "not invisible." Here, however, the standard should be raised given that Plaintiffs have had all contact information for nearly all potential opt-ins since *Juarez*, and Defendants have produced a large volume of documents in that action and the instant case, has produced its witnesses for several rounds of deposition, provided substantial written discovery responses in both cases, and put on weeks of trial testimony. Little discovery remains for Plaintiffs.

A. Regardless Of The Standard, Plaintiff Has Not Shown Sufficient Evidence To Establish That There Are Other Employees Who Desire To Join The Lawsuit.

Before a conditional-certification motion may be granted, a named plaintiff (or plaintiffs) must proffer some evidence that other similarly situated individuals desire to opt in to the litigation. In the absence of such evidence, there would be no basis upon which the Court could conclude that the action was an "appropriate case" for collective-action treatment. As one court has stated, "[o]thers' interest in joining the litigation is relevant to whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants." *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007). Simply put, a plaintiff must do more than show the mere existence of other similarly situated persons, because there is no guarantee that those persons will actually seek to join the lawsuit. *Parker v. Rowland Express, Inc.*, 492 F.Supp.2d 1159 (D. Minn. June 25, 2007). Despite having the contact information for nearly all members of the proposed class members since *Juarez* and actively seeking interested parties, only 9 piece rate workers, including the named Plaintiffs, have actually filed opt-in consent forms (and only 5 of those remain after res judicata and voluntary withdrawal eliminates 4). Plaintiffs have not shown sufficient evidence of individuals interested in pursuing a statewide collective action that includes multiple locations and hundreds of piece rate workers.

B. **Plaintiffs Have Not Shown That They Are "Similarly Situated" To Other Putative Class Members.**

Even if Plaintiffs have sufficiently shown that other individuals desire to join the lawsuit, they still fail to satisfy even the preliminary burden of demonstrating that putative class members are similarly situated.[11]  Conditional certification should be denied where "the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *Basco*, *supra*, 2004 WL 1497709, quoting *Burt v. Manville Sales Corp.*, 116 F.R.D. 276, 277 (D. Colo. 1987).  Plaintiffs are not similarly situated.  Defendants maintained policies and undertook practices to ensure that employees were properly paid for hours worked.  Plaintiffs have the burden of showing that they and others were improperly paid because of the policies.  It is appropriate to deny conditional certification due to lack of evidence of a company-wide policy or practice requiring work without proper compensation.  *Basco, supra*, 2004 WL 1497709 (E.D. La. 2004) (conditional certification denied where any violations appeared to be the result of decisions by individual managers within individual departments at individual stores).

C. **A Collective Action Would Not Increase Judicial Efficiency.**

As discussed herein, an individualized inquiry would be required to determine whether any of the named Plaintiffs actually worked overtime, whether the amounts he received satisfied the requirement that he was paid for every hour worked, whether he had to wait around for cars to work on, on which days and for how long, whether he engaged in "administrative" activities, on which days and for how long, and what is owed to him as a result.  The same process would be required for each putative class member.  There is no judicial economy in this, making a collective action inappropriate.

## VIII. **CONCLUSION**

Based on (1) Plaintiffs' failure to present admissible evidence to establish class certification is appropriate, (2) the predominance of unmanageable individual issues as to liability and damages, as well as (3) the availability of superior alternatives to a class action, Defendants respectfully requests that Rule 23 class certification be denied. In addition, based on the failure to assert sufficient interest of

---

[11] Plaintiffs bear the burden of establishing that they are similarly situated to the proposed class. *Basco, supra,* 2004 WL 1497709, at *5 (FLSA collective action was appropriate only if the plaintiff could show a "factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular" policy or practice).

1   other similarly situated employees to join the lawsuit, Defendants respectfully requests that the motion

2   for collective action be denied.

3   DATED:  JUNE 2, 2015                                  BERLINER COHEN, LLP

4

5                                                                BY:  /s/ Christine H. Long
                                                                        CHRISTINE H. LONG
6                                                                       KARA L. ARGUELLO
                                                                        ATTORNEYS FOR DEFENDANTS
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28