1
2
3
4
5
6

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAFAEL SANDOVAL, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>M1 AUTO COLLISIONS CENTERS, et al.,<br><br>        Defendants. | Case No.  13-cv-03230-EDL<br><br>**ORDER ON PLAINTIFFS' CLASS CERTIFICATION MOTION AND DEFENDANTS' MOTIONS TO DISMISS AND TO DISQUALIFY**<br><br>Re: Dkt. Nos. 75, 96, 100 |

On April 28, 2015, Plaintiffs moved for class certification and appointment of class counsel.  On June 2, 2015, Defendants moved to dismiss and to disqualify class counsel and Plaintiff Ramirez as class representative.  For the reasons set forth below, Plaintiffs' motion is GRANTED in part and DENIED in part and Defendants' motions are DENIED.

## I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendants are M1 Collision Care Centers, Inc. and M1 Auto Collisions Centers ("M1"), Autovest Collision Repairs, Inc. (aka Autowest Collision Repairs, Inc.) ("Autovest"), Serramonte Auto Plaza Body Shop, Inc. ("Serramonte"), and Bobby and Rick Ali ("Ali Defendants").  (SAC ¶ 13, 18.)  It is uncontested that Defendant M1 operates shops located in Concord, Fremont, and Sunnyvale, California, that Defendant Autovest operates in San Jose, California, and that Defendant Serramonte operates in Colma, California.  Plaintiff Sandoval was an employee of M1 in Concord and of Autovest.  (Dkt. 52-5 at 33-43.)  Plaintiff Calixto was also an employee of Autovest.  (Dkt. 52-5 at 26.)   Plaintiff Ramirez was an employee at Serramonte.  (Dkt. 55-1.)

Plaintiffs challenge several facets of Defendants' compensation scheme.  First, Plaintiffs allege that Defendants' method for compensating rest breaks is unlawful under California law.  Plaintiffs' compensation was based on a "flag hour," which is an estimate of the amount of time a particular job takes.  In addition to the time necessary to complete the job, this estimate also

includes time needed for rest breaks, gathering tools, collecting parts and cleaning up.  (Assts Decl. ¶ 10.)  Plaintiffs argue that this system violates California law because it does not separately compensate workers for rest breaks.  (See Mot. Ex. 1 (Autovest 30(b)(6) Dep.) at 133-136 (workers were not paid separately for their 10 minute rest breaks); id. Ex. 2. (Serramonte 30(b)(6) Dep.) at 12 (same); id. Ex. 3 (M1 30(b)(6) Dep.) at 37 (same).)

Second, Plaintiffs contend that Defendants' overtime compensation scheme violates both the Fair Labor Standards Act "FLSA" and the California Labor Code.  Third, Plaintiffs allege that Defendants violated California law by not separately compensating them for activities such as cleaning, attending meetings, training, and waiting for repairs.  (See id. at 128-31 (no formal compensation policy for short incidental training sessions); id. Ex. 2 (Serramonte 30(b)(6) Dep.) at 15 (same); Ramirez Decl. ¶¶ 9-10 (no payment for idle time, clean up, meetings, and other work activities not listed on work orders); Calixto Decl. ¶ 17 (no payment for meetings and clean up).)  Plaintiffs also challenge other aspects of Defendants' compensation scheme, such as the accuracy of their wage statements and their uniform deductions.

On July 12, 2013, Plaintiffs filed this action.  On November 27, 2013, Plaintiffs filed their first amended complaint.  On March 28, 2014, this Court granted in part and denied in part Defendants' motion to dismiss the first amended complaint and denied Defendants' motion to disqualify Plaintiffs' counsel.  On April 18, 2014, Plaintiffs filed the operative second amended complaint, alleging claims for: (1) failure to pay overtime wages and minimum wages under the Fair Labor Standards Act ("FLSA"); (2) failure to pay state minimum wages in violation of the California Labor Code and Wage Orders; (3) failure to pay state overtime wages in violation of the California Labor Code and Wage Orders; (4) failure to provide rest periods or compensation in lieu thereof in violation of the California Labor Code and Wage Orders; (5) failure to pay timely wages after termination or resignation in violation of the California Labor Code; (6) failure to provide itemized employee wage statement provisions in violation of the California Labor Code and Wage Orders; (7) unlawful kickback payments in violation of the California Labor Code; and (8) violations of California unfair competition law.  Plaintiffs bring their claims as class representatives pursuant to Rule 23 of the Federal Rules of Civil Procedure, as "class

United States District Court
Northern District of California

representatives in the interest of the general public under the Unfair Competition Law," and as an

FLSA opt-in class.  (SAC ¶ 1).  On July 9, 2014, this Court dismissed Plaintiffs' claims against

the Ali Defendants based on "joint employer, 'integrated enterprise' and common law employer

theories of liability" with prejudice.  (Dkt. 69 at 13.)[1]

## II.      DEFENDANTS' MOTION TO DISMISS

Defendants move to dismiss, arguing that: (1) *res judicata* applies to Plaintiffs' claims as

they lost in a similar state court action, Juarez v. Ali, Case No. 1-08-CV-121859 (Sup. Ct. Santa

Clara Cnty.); (2) the Court should stay the case pursuant to the Colorado River doctrine; and (3) in

the alternative, the Court should refrain from exercising supplemental jurisdiction over Plaintiffs'

state law claims.

### A.      Standard

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to

'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

(citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The reviewing court's

"inquiry is limited to the allegations in the complaint, which are accepted as true and construed in

the light most favorable to the plaintiff."  Lazy Y Ranch LTD v. Behrens, 546 F.3d 580, 588 (9th

Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions."  Iqbal, 556

U.S. at 678.  "While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations."  Id. at 679.  Thus, a reviewing court may begin "by identifying

pleadings that, because they are no more than conclusions, are not entitled to the assumption of

truth."  Id.

---

[1]Defendants filed a number of objections to Plaintiffs' supporting declarations, based on alleged
contradictions with the declarants' prior deposition and testimony.  (See Opp. at 4 n.6.)  Many of
these objections point only to slight inconsistencies as opposed to outright contradictions.
However, Defendants' objections are GRANTED with respect to paragraph 10 of the Llamas
declaration and paragraph 5 of the Francisco Lopez Jr. declaration.  Those portions of these
declarations are stricken.

United States District Court
Northern District of California

B.      **Discussion**

1.    ***Res judicata* does not apply as it is undisputed that there is no final judgment in <u>Juarez</u>**

This Court has twice rejected Defendants' *res judicata* arguments, citing the lack of a final judgment in <u>Juarez</u>.  (Dkt. 50 at 9; Dkt. 60 at 8-9.)  As previously held, because the superior court's entry of judgment in that case is under appeal, there is no final judgment under California law and *res judicata* therefore does not apply.  <u>See</u> <u>Nathanson v. Hecker</u>, 99 Cal. App. 4th 1158, 1163 (2002) ("'The pendency of an appeal precludes finality under California law. . .'" (quoting <u>In re Bellucci</u>, 119 B.R. 763, 768-769 (E.D. Cal. 1990)); <u>McDonald v. City of W. Branch, Mich.</u>, 466 U.S. 284, 287 (1984) (the full faith and credit statute, 28 U.S.C. § 1738, "obliges federal courts to give the same preclusive effect to a state-court judgment as would the courts of the State rendering the judgment.").

2.    **The balance of the <u>Colorado River</u> factors weighs against a stay**

In rare instances, "'the presence of a concurrent state proceeding' permit the district court to dismiss a concurrent federal suit 'for reasons of wise judicial administration.'"  <u>R.R. St. & Co. Inc. v. Transp. Ins. Co.</u>, 656 F.3d 966, 977-78 (9th Cir. 2011) (quoting <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 818 (1976)).  Courts in the Ninth Circuit weigh the following eight factors  in determining whether a stay pursuant to <u>Colorado River</u> is appropriate:

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

<u>Id.</u> at 978-79.  "No one factor is necessarily determinative."  <u>Colorado River</u>, 424 U.S. at 818.  However, because <u>Colorado River</u> has been "carefully limited . . . courts may refrain from deciding an action for damages only in 'exceptional' cases, and only 'the clearest of justifications' support dismissal."  <u>R.R. St. & Co.</u>, 656 F.3d at 978.

Both Parties agree that the first factor is irrelevant.  The second factor is neutral as both

United States District Court
Northern District of California

United States District Court
Northern District of California

forums are in the San Francisco Bay Area.  As to the third factor, "'[p]iecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results.'"  R.R. St. & Co., 656 F.3d at 979 (quoting Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co., 843 F.2d 1253, 1258 (9th Cir. 1988)).  Significantly, "[t]he mere possibility of piecemeal litigation does not constitute an exceptional circumstance. . . . Instead, the case must raise a special concern about piecemeal litigation, which can be remedied by staying or dismissing the federal proceeding."  Id. (internal quotation marks and citations omitted).  Here, this Court has already found that there are important differences between the present action Juarez:

> Defendants have [] not shown that Plaintiffs Sandoval and Calixto were in privity with the parties in the superior court case. . . . Plaintiffs Sandoval and Calixto were not plaintiffs in the superior court case and no class was certified in that case. . . . [Although] Plaintiff Ramirez is a named plaintiff in the superior court case. . . . Defendants have not established that the claims in this case – which arise from Plaintiffs' employment at Autovest, M1, and Serramonte – are the same as the claims adjudicated in the superior court case, which arose from the superior court plaintiffs' employment at MB Bodyshop. . . . Plaintiff Ramirez . . . was complaining about the piece rate system at MB Bodyshop in the superior court case and is now complaining about the practice at other shops in this case. The superior court pointed out in its order denying class certification that "[i]n general, Defendants' evidence tends to show that different Autowest locations have different circumstances in their use of piece rate systems". . . . Defendants have not shown that the claims in the superior court case and the claims in the present case are the same.

(Dkt. 69 at 8-9.)  Although Defendants argue that there is significant overlap between the defendants in both cases, their counsel successfully argued before the superior court that the scope of Juarez should be limited to MB Bodyshop and not the other corporate entities.  Here, by contrast, there are no claims against MB Bodyshop.  Furthermore, unlike Juarez, at issue here are claims pursuant to the FLSA.  See Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989) ("'the presence of federal-law issues must always be a major consideration weighing against surrender [of jurisdiction]'" (quoting Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 23 (1983))).[2]

---

[2] The cases cited by Defendants are not to the contrary.  Romine v. Compuserve Corp., 160 F.3d 337, 340 (6th Cir. 1998) held that where "congruence of both interests and allegations exists in duplicative class actions, the nonidentity of the named class representatives should in no way undermine a court's determination that the suits in question are otherwise parallel" under the

United States District Court
Northern District of California

As to the fourth factor, the state court obtained jurisdiction first. Nevertheless, because of the differences between the cases described above, this factor is of little significance. The fifth factor is similarly insignificant as at issue here are both federal and state claims. However, this factors weighs somewhat in favor of staying the case as there are more state claims than federal claims. The sixth factor, the ability of the state court to protect Plaintiffs' rights, is also insignificant because of the differences between the cases described above.

As for the seventh factor, Plaintiffs' counsel first filed a purported class action against several of these same defendants in state court. After that effort largely failed, Plaintiffs brought this action.[3] While these facts could support an inference of forum shopping, this case is unlike the instances of forum shopping cited by Defendants. Am. Int'l Underwriters, 843 F.2d at 1259 involved a case where "[a]fter two-and-a-half years, [the plaintiff] [] abandon[ed] its state court case solely because it believe[d] that the Federal Rules of Evidence are more favorable to it than the state evidentiary rules." No such conduct is at issue here. Fireman's Fund Ins. Co. v. Quackenbush, 1996 U.S. App. LEXIS 19493, *20, (9th Cir. Cal. June 18, 1996), involved a significant overlap between the state court case that, for the reasons stated above, is unlike the present case. Finally, Nakash is distinguishable for the reasons previously stated.

Considering all of these factors, this is not an "exceptional" case justifying the application

---

Colorado River doctrine. That case is distinguishable as class certification was denied in Juarez and, thus, the interests of the Parties here are not congruent with the parties in Juarez. In re Countrywide Fin. Corp. Derivative Litig., 542 F. Supp. 2d 1160, 1170 (C.D. Cal. 2008), is distinguishable for the same reason. Nakash v. Marciano, 882 F.2d 1411, 1415-17 (9th Cir. 1989), involved three separate suits between competing clothes brands and their subsidiaries that the Ninth Circuit described as "spin-offs" of each other. Nakash held that the district court did not abuse its discretion in finding that "exceptional circumstances" were present to warrant the application of the Colorado River doctrine. Id. Given the limited scope of Juarez, the same sort of "exceptional circumstances" are not present here. Although Interstate Material Corp. v. City of Chicago, 847 F.2d 1285, 1288 (7th Cir. 1988), noted that the addition of extra defendants alone in a federal action does not necessarily distinguish it from an otherwise similar state court action, in that case the Seventh Circuit observed that "32 of the 39 key paragraphs in plaintiff's state court complaint appeared verbatim in its federal court complaint." Defendants make no such argument here. Finally, Boe v. Christian World Adoption, Inc., 2011 U.S. Dist. LEXIS 48160, *15 (E.D. Cal. Apr. 21, 2011), is distinguishable as at issue in that case was a forthcoming motion to compel arbitration on a contract between near-identical parties where a state court had already compelled arbitration on the same contract.

[3] This court fully summarized the history of Juarez in its March 28, 2014 order on Defendants' motion to dismiss.

of the <u>Colorado River</u> doctrine.

> ### 3. This Court can properly exercise supplemental jurisdiction over Plaintiffs' state law claims

"Federal courts are empowered by the Constitution to hear pendent state claims if '[t]he state and federal claims. . . derive from a common nucleus of operative fact.'  However, this power should be exercised in a discretionary fashion, limited by 'considerations of judicial economy, convenience and fairness to litigants.'"  <u>Notrica v. Bd. of Sup'rs of Cnty. of San Diego</u>, 925 F.2d 1211, 1213 (9th Cir. 1991) (quoting <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 725-26 (1966)).  The claims here arise from a common nucleus of facts and judicial economy supports the exercise of supplemental jurisdiction.  This Court has already ruled on two motions to dismiss and parallel proceedings in state court would be a waste of judicial resources.

> ### 4. Conclusion

Defendants' motion to dismiss is DENIED

## III. PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

Plaintiffs seek to certify the following classes:

> 1. Global Piece Rate Class: All non-exempt piece rate workers who worked at Autovest Collision Repairs, Inc., Serramonte Auto Plaza Auto Body Inc., and M1 Collision Care Centers, Inc. from July 12, 2009 to present.[4]

> 2. FLSA Overtime UCL Class: All non-exempt piece rate workers who worked for Defendants during the period from July 12, 2009 to the present and had workweeks of 40 or more hours.

> 3. Tolling Class: All non-exempt piece rate workers who worked for Defendants during the period from September 4, 2004 to July 11, 2009 whose claims were tolled by the filing of the Santa Clara Superior Court action entitled <u>Juarez et al. v. Ali et al.</u>

Additionally, Plaintiffs seek to certify the following sub-classes:

> 1. Autovest Subclass: All non-exempt piece rate workers employed by Autovest Collision Repairs, Inc. from July 12, 2009 to present.

> 2. Serramonte Subclass: All non-exempt piece rate workers employed by Serramonte Auto Plaza Body Shop. Inc. from July 12, 2009 to present.

---

[4] This definition reflects Plaintiffs' proposal as modified by their supplemental brief.  (<u>See</u> Pls.' Supp. Mot. at 5.)

3. M1 Subclass: All non-exempt piece rate workers employed by M1 Collision Care Centers, Inc. from July 12, 2009 to present.

Finally, Plaintiffs seek to certify a class pursuant to the FLSA defined as "[a]ll non-exempt piece rate workers who worked for Defendants during the period from July 12, 2009 to the present. (See Dkt. 90 (Errata to Class Certification Motion) at 2-3.)

## A.  Standard

Plaintiffs seeking to represent a class must satisfy the threshold requirements of Rule 23(a) as well as the requirements for certification under one of the subsections of Rule 23(b).  Rule 23(a) provides that a case is appropriate for certification as a class action if:

> (1) the class is so numerous that joinder of all members is impracticable ("numerosity");  (2) there are questions of law or fact common to the class ("commonality");  (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality");  and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy").

Fed. R. Civ. P. 23(a).  Plaintiffs seek class certification under Rule 23(b)(3), which provides that a case may be certified as a class action if:

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

A plaintiff seeking class certification bears the burden of demonstrating that each element of Rule 23 is satisfied, and a district court may certify a class only if it determines that the plaintiff has met its burden.  See General Tel. Co. v. Falcon, 457 U.S. 147, 158-61 (1982); Doninger v. Pac. Nw. Bell, Inc., 564 F.2d 1304, 1308 (9th Cir. 1977).  Rule 23 is not a "mere pleading

United States District Court
Northern District of California

1  standard." Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, 131 S.Ct. 2541, 2551 (2011).  Rather, a

2  party seeking class certification must be prepared to prove the existence of the Rule 23(a) criteria.

3  Id.  The Court need not accept conclusory or generic allegations regarding the suitability of the

4  litigation for resolution through class action.  Id. (noting that "'[s]ometimes it may be necessary

5  for the court to probe behind the pleadings before coming to rest on the certification question'"

6  (quoting Gen. Telephone Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982))); see also Moore v.

7  Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983) (noting that "some inquiry into the

8  substance of a case may be necessary to ascertain satisfaction of the commonality and typicality

9  requirements of Rule 23(a)"; however, "it is improper to advance a decision on the merits at the

10  class certification stage"); Burkhalter Travel Agency v. MacFarms Int'l, Inc., 141 F.R.D. 144, 152

11  (N.D. Cal. 1991).  Ultimately, it is in the Court's discretion whether a class should be certified.

12  See Molski v. Gleich, 318 F.3d 937, 946 (9th Cir. 2003); Burkhalter, 141 F.R.D. at 152.

13        **B.**     **Discussion**

14             **1.**   **Class Definitions**

15                 **a.**      **Plaintiffs have standing with respect to the entire M1 subclass**

16      In a class action, "standing is satisfied if at least one named plaintiff meets the [Article III]

17  requirements. . . . that (1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently

18  'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical,' (2) the

19  injury is 'fairly traceable' to the challenged conduct, and (3) the injury is 'likely' to be 'redressed

20  by a favorable decision.'" Bates v. United Parcel Serv., Inc., 511 F.3d 974, 985 (9th Cir. 2007)

21  (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).  "N amed plaintiffs in a

22  class action 'must allege and show that they personally have been injured, not that injury has been

23  suffered by other, unidentified members of the class to which they belong and which they purport

24  to represent.'" Arevalo v. Bank of Am. Corp., 850 F. Supp. 2d 1008, 1016 (N.D. Cal. 2011)

25  (Henderson, J.) (quoting Warth v. Seldin, 422 U.S. 490, 502 (1975)).

26      Here, it is undisputed that M1 has locations in Sunnyvale, Fremont, and Concord and that

27  Plaintiff Sandoval worked at the Concord location.  Nevertheless, Defendants argue that the Court

28  cannot certify a class including employees from M1 in Sunnyvale and Fremont because no named

class representatives worked at these M1 locations.[5]  However, all three M1 locations are part of the same legal entity as each location is registered under a fictitious business name, with the real owner listed as M1 Collision Care Centers, Inc.  (See Pls.' RJN in Opp. to MTD Exs. 4-6 (business records for each M1 location); Dkt. 55-2 (Defendants' Nguyen Decl.) ¶ 12a (referring to "M1's dbas Fremont, Concord and the former Sunnyvale").)  Under California law, "'[u]se of a fictitious business name does not create a separate legal entity.'" Ritter v. Small, 2008 WL 4766740, at *5 (N.D. Cal. Oct. 31, 2008) (Conti, J.) (quoting Pinkerton's, Inc. v. Superior Court, 49 Cal. App. 4th 1342, 1348 (1996)); Providence Washington Ins. Co. v. Valley Forge Ins. Co., 42 Cal. App. 4th 1194, 1200 (1996) ( "Doing business under another name does not create an entity distinct from the person operating the business. The business name is a fiction, and so too is any implication that the business is a legal entity separate from its owner." (internal quotation marks and citations omitted)).  Thus, M1 in Sunnyvale is the same corporate entity as M1 in Fremont and Concord.  Because the real legal entity at issue is M1 Collision Centers, not each of the three locations separately, Plaintiff Sandoval has standing to represent a class of workers from all three M1 locations.  See Arevalo, 850 F. Supp. 2d at 1016-17.  The state court class certification decisions cited by Defendants, Mora v. Big Lots Stores, Inc., 194 Cal. App. 4th 496 (2011) and Koval v. Pac. Bell Tel. Co., 232 Cal. App. 4th 1050 (2014), are not to the contrary as they do not address this issue and were not decided under Federal Rule of Civil Procedure 23.

**b.     Class certification is denied with respect to the tolling class**

In American Pipe and Constr. Co. v. Utah, 414 U.S. 538, 554 (1974), the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  However, later cases make clear that tolling is inapplicable to "class members who file subsequent class actions."  Robbin v. Fluor Corp., 835 F.2d 213, 214 (9th Cir. 1987) (noting that "[t]his position has been squarely rejected by several courts . . . . We see no reason to depart from the well-reasoned holdings of these cases."); Catholic Soc. Servs., Inc. v.

---

[5] Although Plaintiffs contest this account, the Court need not resolve this factual dispute for the reasons stated above.

United States District Court
Northern District of California

1    I.N.S., 232 F.3d 1139, 1147 (9th Cir. 2000) ("If class action certification had been denied . . . and

2    if plaintiffs in this action were seeking to relitigate the correctness of that denial, we would not

3    permit plaintiffs to bring a class action.").

4         As mentioned above, this case is related to Juarez where the plaintiffs' counsel lost class

5    certification.  By bringing this action, class members from that case are seeking, at least partially,

6    to relitigate class certification.  Under these circumstances, tolling of the statute of limitations is

7    inapplicable.  See, e.g., Robbin, 635 F.2d at 214; Griffin v. Singletary, 17 F.3d 356, 359 (11th Cir.

8    1994) ("Plaintiffs may not piggyback one class action onto another and thus toll the statute of

9    limitations indefinitely.").  Therefore, the Court DENIES Plaintiffs' request to certify the tolling

10   class.

### c.      Plaintiffs' proposed class end-dates are proper

12        Defendants argue that, in the absence of tolling, Plaintiffs can only seek to certify classes

13   dating back to 2010, three years before the filing date of the complaint.  (See Opp. at 8 (citing

14   Haro v. City of Los Angeles, 745 F.3d 1249, 1258-59 (9th Cir. 2014).)  However, the statute of

15   limitations for UCL claims is four years.  Cortez v. Purolator Air Filtration Products Co., 23 Cal.

16   4th 163, 178-79 (2000) (The UCL "provides that '[a]ny action to enforce any cause of action

17   under this chapter shall be commenced within four years after the cause of action accrued.' (Italics

18   added.) We recognize that any business act or practice that violates the Labor Code through failure

19   to pay wages is, by definition (§ 17200), an unfair business practice. It follows that an action to

20   recover wages that might be barred if brought pursuant to Labor Code section 1194 still may be

21   pursued as a UCL action seeking restitution pursuant to section 17203 if the failure to pay

22   constitutes a business practice. Nonetheless, the language of section 17208 admits of no

23   exceptions. Any action on any UCL cause of action is subject to the four-year period of limitations

24   created by that section." (emphasis in original).)  Thus, Plaintiffs' proposed July 12, 2009 class

25   cut-off date is proper.

### 2.      Rule 23(a) Requirements

### a.  Plaintiffs have shown numerosity for their proposed global piece rate class but not their proposed subclasses

United States District Court
Northern District of California

1    The first Rule 23(a) requirement is that the class be "so numerous that joinder of all

2    members individually is impracticable."  When evaluating numerosity, courts should consider the

3    number of class members, whether their identities are known, the geographical diversity of class

4    members, the ability of individual claimants to institute separate suits, and whether injunctive

5    relief is sought.  See William W. Schwarzer, et al., Federal Civil Procedure Before Trial, §§

6    10:260-10:264 (Rutter Group 2009).  Numerosity has been found when a class comprised forty or

7    more members, but not when the class comprised twenty-one or fewer members.  See

8    Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995); Ansari v. New

9    York Univ., 179 F.R.D. 112, 114 (S.D. N.Y.1998); see also Wamboldt v. Safety-Kleen Sys., Inc.,

10   2007 WL 2409200, *11 (N.D. Cal. Aug. 21, 2007) (numerosity satisfied when class consisted of

11   approximately 200 members).  Furthermore, while a class action may be divided into subclasses,

12   "each subclass must independently meet the requirements of Rule 23 for the maintenance of a

13   class action."  Betts v. Reliable Collection Agency, Ltd., 659 F.2d 1000, 1005 (9th Cir. 1981);

14   Sueoka v. United States, 101 F. App'x 649, 652-53 (9th Cir. 2004) (each subclass must meet the

15   numerosity requirement).

16   Plaintiffs originally estimated that there are approximately 40 employees in the Autovest

17   class, 50 in the Seramonte class, and 80 in the M1 class.  (See Sutton Decl. Exs. A-J2 (payroll

18   records and summary).)  In their supplemental briefing, Plaintiffs estimate that there are 63 total

19   class members in the global piece rate class, with 23 employees in the Autovest subclass, 17 in the

20   Serramonte subclass, and 23 in the M1 subclass (including all three locations).

21   At 63 members, Plaintiffs' global piece rate class is numerous.  However, it is unclear

22   from the supplemental briefing whether Plaintiffs are still seeking to certify the three proposed

23   subclasses.  As the proposed Serramonte subclass has only 17 members, it is not sufficiently

24   numerous.  See Stockwell v. City & Cnty. of San Francisco, 2015 WL 2173852, at *4 (N.D. Cal.

25   May 8, 2015) (Hamilton, J.) (citing Ansari, 179 F.R.D. at 114).  As both the proposed Autovest

26   and M1 classes contain 23 members, they fall "into the gray area between 21 and 40 class

27   members" in which "courts must consider factors other than class size . . . [including:] (1) the

28   judicial economy that will arise from avoiding multiple actions; (2) the geographic dispersion of

12

members of the proposed class; (3) the financial resources of those members; (4) the ability of the members to file individual suits; and (5) requests for prospective relief that may have an effect on future class members." Ansari v. New York Univ., 179 F.R.D. 112, 114-15 (S.D.N.Y. 1998) (citing Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993)); Greko v. Diesel U.S.A., Inc., 277 F.R.D. 419, 425 (N.D. Cal. 2011) (Seeborg, J.) (considering these factors).  These factors weigh against certification.  First, as in Ansari, there is no evidence that "individual members of the prospective class have filed or threatened to file their own actions."  Ansari, 179 F.R.D. at 115. Thus, certifying these subclasses will likely not effect judicial economy.  Second, the potential class members are not geographically dispersed as they all work in the San Francisco Bay Area. This weighs against certification.  Id. at 115.  Third, Plaintiffs cite no evidence that they are "disproportionately economically disadvantaged."  (See Pls.' Supp. Mot. at 6.)  Fourth, the ability to bring individual suits factor is neutral.  As Defendants argue, individual class members can bring wage and hour claims before the California labor commissioner.  Furthermore, this is not a case where potential class members have no financial incentive to bring an individual suit. However, Plaintiffs' persuasively argue that many class members have educational and language barriers that would make bringing a suit difficult.   Finally, the fifth factor weighs against certification as Plaintiffs are not seeking relief for unspecified future class members.  See id. at 116.  Taken together, these factors weigh against a finding that numerosity is met by these subclasses.  Accordingly, class certification is DENIED with respect to Plaintiffs' three proposed subclasses.[6]

### b.    Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." This standard has been construed permissibly; "[a]ll questions of fact and law need not be common to satisfy the rule."  Hanlon v. Chrysler, 150 F.3d 1011, 1019 (9th Cir. 1998); see also Staton v. Boeing, 327 F.3d 938, 953 (9th Cir. 2003).  Rather, the "existence of shared legal issues

---

[6] Plaintiffs do not provide evidence indicating that numerosity is satisfied with respect to their FLSA Overtime UCL Class.  Because, as explained below, commonality is not satisfied with respect to Plaintiffs' overtime claim, the Court does not address whether numerosity is met for this class.

with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Hanlon, 150 F.3d at 1019.  Commonality requires that the class members have suffered the same injury.  Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011).  The class claims must depend on a common contention that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.  What matters is the "'capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" Id. (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 131-32 (2009)) (emphasis in original).  "Dissimilarities within the proposed class are what have the potential to impede the generation of common answer." Id.

### i.   Plaintiffs have shown commonality on their rest breaks claim

Plaintiffs argue, relying on Bluford v. Safeway Stores, Inc., 216 Cal. App. 4th 864 (2013), Perez v. Sun Pacific Farming Co-op, Inc., 2015 WL 3604165 (E.D. Cal. June 8, 2015), and Shook v. Indian River Transportation Co., 2014 WL 7178199 (E.D. Cal. Dec. 16, 2014), that commonality exists on the question of whether Defendants' piece rate policy failed to compensate piece rate workers with a separate payment for rest breaks in violation of California law.  Bluford involved a payment system for truck drivers that did not separately compensate drivers for rest breaks.  216 Cal. App. 4th at 870-71.  Instead, drivers were compensated, in part, by mileage rates (e.g., how many miles they drove) and the defendant argued that the rate of compensation for each mile factored in compensation for rest breaks. Id. at 871.  The Court described the system as follows:

> [Defendant's] activity based compensation system did not separately compensate drivers for their rest periods. Pay was calculated based on mileage rates applied according to the number of miles driven, the time when the trips were made, and the locations where the trips began and ended. None of these components directly compensated for rest periods. Driver pay was also based on fixed rates for certain tasks and hourly rates for other tasks and delays. There is no dispute that none of these fixed rates were applied to rest periods.

Id. at 872.  After noting that "[u]nder Industrial Welfare Commission wage orders, employers are required to 'authorize and permit all employees to take rest periods' at the rate of at least 10

14

minutes for every four hours worked,'" and that "'[a]uthorized rest periods shall be counted as hours worked for which there shall be no deduction from wages,'" the Court concluded that "a piece-rate compensation formula that does not compensate separately for rest periods does not comply with California minimum wage law." Id. 871-72 (citing Cal. Code Regs., tit. 8, §§ 11070, subd. 12; 11090, subd. 12.)

This case involves a compensation system that bears some similarities with but also somewhat differs from the one at issue in Bluford.  Here, Plaintiffs were paid an hourly flag rate based on an estimate of how long it takes the average employee to perform a repair, including time for, among other things, rest breaks.  (Assts Decl. ¶ 10.)  Unlike in Bluford, where miles driven served as a proxy for time worked and rest break time was therefore compensated essentially as a percentage of each mile driven, here rest break time is more directly computed as part of the flag hour estimate.  Nevertheless, the common question at issue here is the same as in Bluford: whether or not Defendant's method of compensating for rest breaks conforms with California law.  See also Perez v. Sun Pac. Farming Co-op., Inc., , 2015 WL 3604165, at *7 (E.D. Cal. June 8, 2015) ("When an employer pays its employees by the piece, however, those employees cannot add to their wage during rest breaks; a break is not for rest if piece-rate work continues. To be compensated, then, a separate non-piece-rate wage must be paid for rest breaks."); Shook v. Indian River Transp. Co., 72 F. Supp. 3d 1119 (E.D. Cal. 2014) (citing Bluford approvingly for a similar proposition).

Defendants' citation to Vasquez v. First Student, Inc., 2015 U.S. Dist. LEXIS 30631 (C.D. Cal. Mar. 12, 2015), is not to the contrary.  At issue in Vasquez was a system for paying school bus drivers that the Court characterized as follows:

> Plaintiff argues that First Student pays Drivers on a piece-rate plan because it sets 'standard' hours or minutes for specific tasks. For example, a driver might be allocated five hours total for a workday, with a specific number of minutes allocated each to pre-trip inspection, post-trip inspection, fueling, and other duties, including a specific number of hours allocated to driving the route. Drivers are paid according to this fixed schedule, regardless of how many hours are actually worked, unless the Driver fills out an exception form . . . . Plaintiff argues that Defendants provide no "standard" for rest breaks and therefore have failed to pay Drivers for rest breaks. . . .

United States District Court
Northern District of California

Id. at *15-17 (citations omitted).  The Vasquez court ultimately denied class certification, noting that:

> Plaintiff has not proffered a viable method of determining when (or if) a particular  Driver took a rest break on a particular day, short of obtaining testimony regarding each Driver at each location. The parties agree that rest breaks were not recorded on employees' paychecks and the parties have provided conflicting declarations as to whether rest breaks were taken. The Court is therefore left without a method of establishing by common proof when rest breaks were or were not taken by members of the class. *Thus, Plaintiff has not proffered a viable class-wide method of showing whether any rest break policy was actually implemented*

Id. at *21-22 (emphasis added).  Here, unlike in Vasquez, there is no question of whether a rest break policy was actually implemented.  Rather, the question is whether the rest break policy that was implemented conforms with California law.  As that issue is common to all potential class members, commonality is satisfied with respect to this claim.

### ii.  Plaintiffs have not shown commonality on their non-repair tasks claim

Plaintiffs argue, relying on Gonzalez v. Downtown LA Motors, LP, 215 Cal. App. 4th 36 (2013), that commonality exists as to whether Defendants' compensation scheme for non-repair tasks (e.g., waiting and administrative time) violates California law.  Gonzalez involved a similar pay system to the one at issue here:

> Flag hours are assigned by Mercedes–Benz to every task that a technician performs on a Mercedes–Benz automobile and are intended to correspond to the actual amount of time a technician would need to perform the task. *A DTLA technician who completes a repair task accrues the number of flag hours that Mercedes–Benz assigns to that task, regardless of how long the technician actually took to complete it.* DTLA technicians accrue flag hours only when working on a repair order. . . .
>
> In addition to tracking a technician's flag hours, DTLA also keeps track of all the time a technician spends at the work site whether or not the technician is working on a repair order. At the end of each pay period, DTLA calculates how much each technician would earn if paid an amount equal to his total recorded hours "on the clock" multiplied by the applicable minimum wage. DTLA refers to this amount as the "minimum wage floor." If a technician's flat rate/flag hour pay falls short of the minimum wage floor, DTLA supplements the technician's pay in the amount of the shortfall.

215 Cal. App. 4th at 41-42 (emphasis added).  A significant issue in Gonzalez was that when employees were not working on a repair order, they had to remain in the shop and were directed to

1   perform other tasks such as cleaning, participating in on-site training, and so on.  Id. at 53.  Under

2   these circumstances, the Court concluded that "class members were entitled to separate hourly

3   compensation for time spent waiting for repair work or performing other non-repair tasks directed

4   by the employer during their work shifts, as well as penalties under Labor Code section 203,

5   subdivision (a)."  Id. at 40-41.

6        Here, unlike in Gonalez, workers were not always required to stay at work and could leave

7   when there were was no work to perform.  (Long Decl. Ex. 6 (Sandoval Dep.) at 46, Ex. 8 (Flores

8   Dep.) at 65; Avendano Decl. ¶ 14; Davila Decl. ¶ 19; Gomes Decl. ¶ 15.)  Furthermore, the

9   estimated flag hours included "time for breaks, getting [] tools, looking up [the] order, gathering

10  parts, and cleaning up after the repair."  (Assts Decl. ¶ 10.)

11       Nevertheless, Plaintiffs cite evidence indicating that they were required to perform some

12  non-compensated tasks.  (Mot. Ex. 1 (Autovest 30(b)(6) Dep.) at 128-31 (no formal compensation

13  policy for short incidental training sessions); id. Ex. 2 (Serramonte 30(b)(6) Dep.) at 15 (same);

14  Flores Decl. ¶ 13 ("I was [] not paid for meetings, clean up, and other work activities that are not

15  listed on work orders"); Lopez Decl. ¶ 15 (same); Ramirez Decl. ¶ 10 (same); Calixto Decl. ¶ 17

16  ("At Autowest I would have to clean my area between jobs and at the end of the day. I also would

17  have to attend meetings and sometimes wait for a car to be ready for me to start working. I was not

18  paid for this time."); Palau Decl. Ex. 6 (Diaz Decl.) ¶ 6 ("Autowest forced me to carry out a

19  variety of tasks without any payment per piece or by hour.  For example, I was not paid for the

20  following: moving cars, being in work meetings, doing cleaning, waiting for work, preparing my

21  work area, buying parts for the shop and taking cars to the dealer.").)  While Defendants argue that

22  this time was incidental, this evidence indicates that the amount of non-repair work activity that

23  workers were asked to do is much more than "tossing paper or plastic into a bin and wiping down

24  their tools."  (See Opp. at 15.)  Nor does this evidence directly contradict, as Defendants argue,

25  Mr. Krause's testimony regarding how flag hours are derived from studies based on the total time

26  it takes to complete a job, including cleanup.  (See Long Decl. Ex. 26 (Krause Testimony) at

27  1812-13, 1819-22.)

28       However, there is no evidence that Defendants maintained a formal policy of not

United States District Court
Northern District of California

compensating workers for training and waiting time.  (See Long Decl. Ex. 28 (Avendano Decl.) ¶ 13 (employees were compensated for formal training.)  Plaintiffs appear to only highlight incidental training sessions that occurred on an ad hoc basis and waiting time that varied by employee.  For example, Francisco Lopez testified that during his employment, he only waited around for work on approximately ten days.  (Long Decl. Ex. 10 (Lopez, Sr. Dep.) at 22.)  Similarly, Eddy Sifuentes testified that he could not remember ever having down time.  (Id. Ex. 12 (Sifuentes Decl.) at 18; see also Mata Robles Decl. ¶ 6, 9 ("The shop is generally very busy.  As a result, there is a constant flow of vehicles to work on . . . my work is not interrupted by needing to wait for parts . . . . I also understand that the job included getting the car, prepping the area and my tools, and cleaning my tools. I had plenty of time to complete the work necessary for each job.");  Gutierrez Decl. ¶ 6 (same); Hernandez Decl. ¶ 6 (stating that work is generally busy); Fuentes Decl. ¶ 6 (same).)  In contrast, Manual Llamas testified that in the two years prior to his deposition, there was not much work.  (Id. Ex. 9 (Lamas Decl.) at 25.)  In contrast to Plaintiffs' rest breaks claim, Defendants had no common policy for waiting and administrative time.  Rather, this claim requires individualized inquiries as to whether, and the extent to which, each employee was required to work on but was not compensated for such tasks. Commonality is thus lacking for this claim.  See Wal-Mart Stores, 131 S.Ct. at 2551 (2011) (what matters is the "capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation" (internal quotation marks and citation omitted)).

### iii.  Plaintiffs have not shown commonality on their overtime claim

Defendants contend that they compensate their employees using estimates of flag hours that do not exactly correspond to the amount of time a job actually took.  (See generally Dkt. 85-3 (Nguyen Testimony) at 11-26 (describing the entire system).)  Flag hours represent estimated completion time of a particular job.  When a worker completes a job, that worker gets all the flag hours assigned to that job, regardless of how long the job actually took.  (See Assts Decl. ¶¶ 9-10.)  Flag hours are adjustable, so if the employee thinks the job will take longer, the employee can ask for more hours.  (Id. ¶ 12.)  Generally, experienced employees tend to work 30-40% faster than the

flag hour estimate.  (Id. ¶ 15.)  In addition to tracking flag hours, Defendants also separately track the total time their employees work.  (Id. ¶¶ 16-20.)

Different employees have different hourly rates.  (See Nguyen Decl. ¶ 32.)  In general, an employee's compensation is determined by multiplying the greater of either the number of flag hours worked or total hours worked by that employee's hourly rate. (See id.; Assts Decl. ¶ 15 (noting that newer employees often work slower than the piece rate and as a result tend to be compensated "strictly hourly").)[7]  In order to account for overtime, Defendants contend that they compare what their employees make under the above system with a calculation of what an employee would have been paid based on the number of hours they actually worked multiplied by their hourly rate (and factoring in overtime rate adjustments).   (See Nguyen Decl. ¶ 32.)  Where the overtime calculation is less than what the employee would be compensated under their flag hour system, no adjustment is made.  However, where the overtime amount is greater, the rate of pay is adjusted upward.  (See Nguyen Decl. ¶¶ 30-32; see also Assts Decl. ¶¶ 21-24 (confirming Nguyen's testimony); Dkt. 85-3 at 11-26.)[8]

Plaintiffs dispute Defendants' account of how they compensate for overtime.  In their motion, Plaintiffs appear to argue that under California law, Defendants should have calculated how many flag hours were completed during the first eight hours of work and paid overtime rates based on any flag hours completed thereafter.  However, Defendants note that they do not track when an employee completes certain flag hours.  (See Opp. at 19-20.)  Furthermore, it does not appear as if the named Plaintiffs kept track of the hours they spent on each task.  (See Calixto Decl. ¶ 15 ("Because I knew I was not paid based on the time I worked but by the number of jobs and cars I completed, I did not focus on keeping track of my hours and was not overly concerned that we really did not have a time clock."); see also Llamas Decl. ¶ 12 (stating that he did not

---

[7] However, there is some variation on this method as different types of jobs are compensated differently.  For example, while "body men" were compensated this way, painters worked on a team and were compensated by being paid a portion of their team's weekly flag hours.

[8] Although Plaintiffs appear to argue that Alex Assts' testimony as a 30(b)(6) witness somehow contradicts Emily Nguyen's representations as to how Defendants compensate for overtime, no contradiction is apparent and Plaintiffs were unable to explain any contradiction at the hearing. Moreover, Mr. Assts confirmed that the compensation system is as Ms. Nguyen describes.  (Assts Decl. ¶¶ 21-24.)

1    clock his hours); Flores Decl. ¶ 12 (same).)  Thus, determining whether Defendants violated

2    California overtime laws under this method appears to be impossible to prove with common

3    evidence.

4           As Plaintiffs asserted a different overtime theory at oral argument, the Court ordered the

5    Parties to submit supplemental briefing.  In their supplement, Plaintiffs argue that Defendants

6    should have calculated overtime differently, citing the California Division of Labor Standards and

7    Enforcement Manual ("DLSE Manual") as follows:

> 49.2.1.2 Piece Workers, Production Bonus Workers or Commission
> Workers : (See O.L. 1993.02.22-1, 1988.06.15, 1988.03.28,
> 1994.06.17-1; 1988.07.14, 1987.02.17). Either of the following two
> methods can be used to determine the regular rate for purposes of
> computing overtime compensation:
>
> 1. Compute the regular rate by dividing the total earnings for the
> week, including earnings during overtime hours, by the total hours
> worked during the week, including the overtime hours. For each
> overtime hour worked, the employee is entitled to an additional one-
> half the regular rate for hours requiring time and one-half and to an
> additional full rate for hours requiring double time. This is the most
> commonly used method of calculation.
>
> 2. Using the piece or commission rate as the regular rate and paying
> one and one-half times this rate for production during overtime
> hours. This method is rarely used.

17   (Dkt. 76-1 at 5.)  Plaintiffs argue that the second compensation scheme is inapplicable because

18   Defendants do not track hours.  (Pls.' Supp. Mot. at 8-10.)  Thus, Plaintiffs contend that

19   Defendants' overtime compensation scheme violates California law because it does not comport

20   with the first compensation scheme.  (Id.)

21          However, "the Supreme Court of California has said that this DLSE Manual is 'void and

22   not entitled to any deference' because it was not passed in accordance with California's

23   Administrative Procedure Act."  Peabody v. Time Warner Cable, Inc., 689 F.3d 1134, 1137 (9th

24   Cir. 2012) (citing Tidewater Marine W., Inc. v. Bradshaw, 927 P.2d 296, 308 (1996)); see also

25   Defs.' RJN Ex. P (screenshot of California Department of Industrial Relations website noting that

26   the DLSE Manual is "currently under review to determine [its] legal force and effect and to ensure

27   compliance with the Administrative Procedures Act"); Peabody v. Time Warner Cable, Inc., 59

28   Cal. 4th 662, 670 (2014) (noting that the DLSE is not entitled to deference).  Even if the DLSE

United States District Court
Northern District of California

1   was relevant, Plaintiffs fail to show commonality on their new overtime theory or that Defendants'

2   compensation scheme violates the manual's requirements.  Plaintiffs explain their theory by citing

3   the following example from Defendants' Nguyen declaration:

4   > Example 1: Luis Martin Calixto – Week ending March 28, 2008.
5   > Assume Mr. Calixto worked 10.3 hours each day for all 5 days that
    > week. His total hours clocked would be 51.5 hours. I ensured he was
    > paid for each hour worked. So, 40 hours would be paid at his regular
6   > rate ($22/hour), and the 11.5 hours of overtime would be paid at 1.5
    > times that rate ($33/hour). 40 hours * $22 = $880; 11.5 hours * $33
7   > = $379.50. Total owed = $1,259.50.

8   (Nguyen Decl. ¶ 32.)  According to Defendants, under their system "Mr. Calixto was paid

9   $1,540.00, so he was fairly compensated because he was only owed $1,259.50."  (Id.)

10  Nevertheless, Plaintiffs contend that a different calculation should have been employed:

11  > Under the first DLSE formula one, Mr. Calixto's "regular rate" must
    > first be calculated. The regular rate is calculated by dividing the total
12  > earnings for the week including earnings during overtime hours, by
    > the total hours worked each week. Applying this formula to this case
13  > produces the following: Regular rate = $1540/51.5 hours = $29.90;
    > Overtime Premium = $14.95. Therefore, under the first DSLE
14  > formula, Defendants would be required to pay the following:
    > Regular Pay = 51.5 (hours) x 29.90 (regular rate) = $1540. Overtime
15  > Pay = 11.5 (hours) x 14.95 (overtime premium) = $171.93. Total =
    > 1540+171.93 = 1711.93. Hence, under the first formula defendant
16  > owes Calixto $171.93 (plus interest and penalties).

17  (Id. at 9.)  This calculation would require an individual inquiry into each class members' pay

18  records.  Moreover, it that would inevitably result in the conclusion that Defendants owe

19  additional overtime, regardless of how many overtime hours an employee actually worked, as the

20  calculation essentially takes what Defendants paid their employees as a starting point and adds on

21  additional overtime premiums.  This does not appear to be a result contemplated by the DLSE

22  Manual, especially since the second DLSE compensation scheme, although "rarely used," allows

23  Defendants to use an assigned rate of pay when calculating wages owed, which is what the

24  evidence indicates Defendants do.[9]

25  **iv.  Plaintiffs have shown commonality on their claim for**

26

27  _____

    [9] Defendants also argue, and Plaintiffs do not contest, that commonality is lacking with regard to
    Plaintiffs' claim that hours worked off-the-clock were not properly compensated.  Opp. at 20-22;
28  see W. v. Border Foods, Inc., 2006 WL 1892527, at *9-10 (D. Minn. July 10, 2006); Bros. v.
    Portage Nat. Bank, 2007 WL 965835, at *6-7 (W.D. Pa. Mar. 29, 2007).

**violation of California Labor Code Section 226**

The California Labor Code requires employers to provide an "accurate itemized statement in writing" of, among others, wages earned, total hours worked, piece-rate units earned and any applicable piece-rate. See Cal. Labor Code § 226(a). Plaintiffs argue that Defendants' wage statements were inaccurate as Defendants failed to fully compensate their employees for the reasons previously stated. In response, Defendants argue, without citation, that they did not violate Section 226 because they accurately reported what they paid to Plaintiffs. Furthermore, Defendants argue that Plaintiffs fail to allege an injury. See Ortega v. J.B. Hunt Transp., Inc., 258 F.R.D. 361, 374 (C.D. Cal. 2009) ("[L]iability will lie for violations of Labor Code Section 226 only where some specific injury caused by the inaccuracy can be identified . . . [T]he types of injuries on which a Section 226 claim may be premised include the possibility of not being paid overtime, employee confusion over whether they received all wages owed them, difficulty and expense involved in reconstructing pay records, and forcing employees to make mathematical computations to analyze whether the wages paid in fact compensated them for all hours worked."). Whether or not Defendants' statements were inaccurate and injured Plaintiffs present common questions. Therefore, Plaintiffs have shown commonality for this claim.

### c.   Typicality

Rule 23(a)(3) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020; see also Staton, 327 F.3d at 957. Although the claims of the purported class representative need not identical to the claims of other class members, the class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 156 (1982). That injuries may differ in amount does not defeat typicality. See William W. Schwarzer, et al., Federal Civil Procedure Before Trial, § 10:293 (Rutter Group 2009) (a plaintiff's claims may be typical although other members of the class suffered less or more injury). "[T]he commonality and typicality requirements of Rule 23(a) tend to merge."

1   <u>Dukes</u>, 131 S. Ct. at 2541.

2        Defendants argue that typicality is not present here, noting that a separate pay structure

3   exists for different types of employees.  For example, Defendants note that body men generally

4   were compensated by total flag hours completed.  However, Francisco Lopez, Sr., a body man,

5   sometimes was assisted by his son, Francisco Lopez, Jr., and they split flag hours between them.

6   (See Long Decl. Ex. 10 (Lopez, Sr. Dep.) at 73-74.)  In contrast, painters, preparers and polishers

7   worked as a team and were compensated by splitting a portion of the total flag hours that the team

8   had worked that week.  The exact apportionment varied by team.  (<u>See</u> Long Decl. Ex. 24

9   (Albright Decl.) ¶ 4.)   Additionally, sometimes polishers were paid on an hourly basis instead of

10  splitting the teams' flag hours.  (Soto Decl. ¶ 8.)

11       These variations are insufficient to prevent a finding of typicality.  First, if an employee

12  was only ever paid on an hourly basis, that employee falls outside the class definition, which is

13  limited to "non-exempt piece rate workers."  Furthermore, the method by which an employee is

14  compensated via the piece-rate system, either directly or as a portion of a team's total piece-rate

15  hours, does not alter the analysis of whether that employee's compensation for rest break time and

16  pay statements violated California law.  Accordingly, Plaintiffs have shown typicality with respect

17  to their rest breaks and California Labor Code Section 226 claims.[10]

18                     **d.    Adequacy**

19       Rule 23(a)(4) permits the certification of a class action only if "the representative parties

20  will fairly and adequately protect the interests of the class."  "The adequacy inquiry under Rule

21  23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to

22  represent."  <u>Amchem Prods. v. Windsor</u>, 521 U.S. 591, 625-26 (1997).  Representation is adequate

23  if: (1) the class representative and counsel do not have any conflicts of interest with other class

24  members; and (2) the representative plaintiff and counsel will prosecute the action vigorously on

25

26  _____

[10] Defendants also note that there is inconsistent testimony over uniform deductions.  (<u>Compare</u>

27  Fuentes Decl. ¶ 21 (explaining that he was not assessed a uniform deduction on his paycheck) <u>with</u>
    Hernandez Decl. ¶ 22 (explaining that he was assessed a uniform deduction on his paycheck).)  As

28  Plaintiffs do not address the uniform deductions issue in their briefing, the Court does not certify a
    class on this claim.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   behalf of the class.  See Staton v. Boeing, 327 F.3d 938, 957 (9th Cir. 2003).  A class

2   representative must also suffer the same injury as the class members and be part of the class.

3   Amchem, 521 U.S. at 626 (quoting East Tex. motor Freight Sys., Inc. v. Rodriquez, 431 U.S. 395,

4   403 (1977)).  The adequacy of representation requirement tends to merge with the commonality

5   and typicality criteria.  Id. at 626 n.20.

6           Defendants challenge the adequacy of class counsel and Plaintiff Ramirez.[11]

7                           **i.   Class counsel is adequate**

8           Class counsel may be inadequate under Rule 23 if they seek to represent class members

9   with different interests.  See Ortiz v.  Fibreboard Corp., 527 U.S. 815, 856 (1999) ("First, it is

10  obvious after Amchem that a class divided between holders of present and future claims (some of

11  the latter involving no physical injury and to claimants not yet born) requires division into

12  homogeneous subclasses under rule 23(c)(4)(B), with separate representation to eliminate

13  conflicting interest of counsel.").  The Court in Ortiz cited Moore's Federal Practice for the

14  proposition that "an attorney who represents another class against the same defendant may not

15  serve as class counsel."  Id.  No actual conflict of interests is required for disqualification; even the

16  appearance of divided loyalties of counsel is contrary to class counsel's responsibility to absent

17  class members.  Kayes v.  Pac.  Lumber Co., 51 F.3d 1449, 1465 (9th Cir. 1995) (finding that

18  district court did not abuse discretion in requiring class counsel to withdraw from representing

19  named plaintiffs in individual actions in order to represent class).  "The 'appearance' of divided

20  loyalties refers to differing and potentially conflicting interests and is not limited to instances

21  manifesting such conflict."  Id.  Nevertheless, class counsel will not necessarily be disqualified

22  merely for representing another class against the same defendants when, for instance, the

23  purported conflicts are illusory and speculative, the class has co-counsel untainted by the conflict,

24  and there are procedural safeguards protecting the class's interests, such as requiring disclosure of

25  the potential conflict to class members and requiring court approval for settlements.  Sheftelman v.

26  _____

27  [11] On July 16, 2016, Plaintiffs filed an untimely declaration without leave of the Court in support
    of their opposition to the motion to disqualify that attaches a transcript from the Juarez trial.  As
28  Plaintiffs do not offer any reason, let alone good cause, for why the Court should consider this
    declaration, it is hereby STRICKEN.

1    <u>Jones</u>, 667 F. Supp. 859, 865-66 (N.D. Ga. 1987).

2        In <u>Lou v. Ma Labs. Inc.</u>, 2014 U.S. Dist. LEXIS 2665, at *7 (N.D. Cal. Jan. 8, 2014)

3    (Alsup, J.), the court found that class counsel could not adequately represent the proposed class

4    because counsel also represented another class in state court against the same defendants alleging

5    many of the same or substantially similar claims as in the federal case.  The court cited <u>Ortiz</u> and

6    pointed out that according to <u>McLaughlin on Class Actions</u>, "[c]ourts have consistently held that

7    counsel cannot simultaneously represent a class and prosecute either individual or class claims

8    against the same defendants in a different proceeding, even if there is partial overlap among the

9    plaintiffs or class members in the cases." <u>Id.</u> at *5-*6.  The court noted that risk of counsel

10   compromising one class for another is high in such situations.  <u>Id.</u> at *6.  The court also noted that

11   although Rule 23 does not apply to a FLSA collective action, a district court has discretion over

12   such actions.

13       Here, Defendants move for the third time to disqualify Plaintiffs' counsel, citing their

14   involvement in <u>Juarez</u>.  However, this Court previously rejected Defendants' suggestion that the

15   mere fact that Plaintiffs' counsel are maintaining a second class action against them renders

16   counsel inadequate, noting that:

17           According to [Newberg on Class Actions § 3:75 (5th ed.)], "[i]n
             general, class counsel may represent multiple sets of litigants—
18           whether in the same action or in a related proceeding—so long as
             the litigants' interests are not inherently opposed." <u>Id.</u> Newberg
19           notes that concurrent representation may be beneficial in some
             situations, and that courts have found counsel inadequate due to
20           conflicts where "the recovery of one group in one forum inherently
             conflicts with the recovery of the other." <u>Id.</u> Newberg sets forth
21           examples such as where a limited fund means that the recovery of
             one claimant will cut directly into recovery by another, where
22           substantive law permits recovery by only one or the other set of
             litigants, where one client is litigating an appeal to a class action
23           settlement in which another client claimed recovery, and where
             counsel's   actions   have   generated   conflicts   between   class
24           representatives and the class. <u>Id.</u>

25   (See Dkt. 50 at 17-18.)

26       Moreover, Defendants' argument that a conflict of interest exists because Plaintiffs'

27   counsel argued in <u>Juarez</u> that rest breaks were not given and argue here that rest breaks were given

28   but not separately compensated is unpersuasive.  The <u>Juarez</u> complaint, cited by Defendants,

United States District Court
Northern District of California

1    alleges a "violation of California Labor Code § 226.7 by requiring Class Members to work during

2    rest periods (*or not paying Class Members during breaks taken*)."  (Defs.' RJN Ex. B at 23

3    (emphasis added); <u>see also</u> Pls. RJN Ex. A at 12 (Plaintiffs' Opposition to Summary Judgment in

4    <u>Juarez</u>) (arguing under California law that "a separate hourly payment must be paid for rest

5    breaks").)  This position is not inconsistent with Plaintiffs' arguments in this action.  Additionally,

6    there is no clear inconsistency, as Defendants contend, in Plaintiff Calixto's statements.  He

7    previously stated that: "[E]xcept for the rest times I would get in a conversation or get a phone call

8    I did not get or take any rest breaks."  (Long Decl. Ex. 1 (Calixto Decl. in <u>Juarez</u>) at 3.)  However,

9    in a deposition, he stated:

10                    Q. You could take a rest break for at least ten minutes, correct?

11                    A. I wouldn't take them but I could.

12   (Long Decl. Ex. 2 (Calixto Dep. in this case) at 47.)  This is not inconsistent.  Even if it were, this

13   inconsistency alone does not show that counsel has a conflict of interest.[12]

14          Moreover, if Plaintiffs win on appeal in <u>Juarez</u>, Defendants have not shown that a conflict

15   of interest exists here because of the potential for a new state court trial and competing judgments.

16   Furthermore, the potential for conflicting judgments is not resolved by disqualifying Plaintiffs'

17   counsel.  Additionally, Defendants' argument in their reply that Plaintiffs' counsel is taking

18   inconsistent positions as to the Defendants in <u>Juarez</u> is also unavailing.  Plaintiffs lost their alter

19   ego theory in <u>Juarez</u> and were denied class certification.  That case proceeded against MB Body

20   Shop, which is not a Defendant here.

21          Finally, Defendants' arguments with regard to Plaintiffs' discovery conduct and the

22   withdrawal of some opt-in plaintiffs does not show that Plaintiffs' counsel is inadequate.

23   Plaintiffs served discovery in this case.  (<u>See</u> Margain Decl. ¶ 2.)  The fact that some overlap

24   exists between this action and <u>Juarez</u> does not demonstrate deficient discovery.  Additionally,

25   Defendants cite no authority suggesting that the withdrawal of some opt-in plaintiffs renders

26

27   _____

28   [12] In their reply, Defendants argue that a conflict exists because Plaintiffs alleged in <u>Juarez</u> that
     Defendants' compensation system was consistent with the FLSA but allege FLSA violations here.
     However, Defendants cite no evidence in support of this argument.

United States District Court
Northern District of California

1    counsel inadequate.

2                                    **ii.  Plaintiff Ramirez is adequate**

3           Defendants also move to disqualify Plaintiff Ramirez as class representative, arguing that

4    his testimony in <u>Juarez</u> contradicts his testimony in this case.  First, Defendants argue that Plaintiff

5    Ramirez's testimony with regard to morning rest breaks is inconsistent.  In <u>Juarez</u>, he stated:

6                Q. Would you take rest breaks at Serramonte?

7                A. In the morning, the lunch truck would get there and so that was
             the time that we all took the morning break.
8
     (Long Decl. Ex. 4 at 53-54.)  In this case, Plaintiff Ramirez stated:
9
                THE WITNESS: A van came that we called the lunch van. On some
10           occasions I went to buy something there, on some other occasions I
             stayed working. . . .
11
                Q. Okay. So was it typical for you to go to the lunch van and
12           purchase some food at 10:00 a.m. or when it arrived?

13              A. Not very much.

14              Q. Sometimes?

15              A. Sometimes.

16   (Margain Decl. Ex. 1 at 69-70.)  While his testimony here differs somewhat from his statements in

17   in <u>Juarez</u> and could form a basis for cross-examination, it is not sufficiently contradictory to render

18   him inadequate.

19          Next, Defendants point to Plaintiff Ramirez's testimony regarding the existence of a time

20   clock computer.  All parties agree that Ramirez previously stated that there was no computer but at

21   trial clarified that there was a computer but that it was never used by him or his colleagues.

22   (Arguello Disqualify Reply Decl. Ex. 9 at 146-47.)  At his deposition in this case, Plaintiff

23   Ramirez clarified that there "was a computer in the corner at the entrance turned off, full of dust,

24   that . . . was never on.  Nobody checked in, and I didn't do it. And nobody told me I had to do it."

25   (Opp. at 8.)  Again, this testimony, although slightly different, is not grounds for disqualification.

26          Finally, although Plaintiffs admit that there is some inconsistency in Plaintiff Ramirez's

27   testimony about having to attend work meetings and having to move cars, this does not render

28   Plaintiff Ramirez inadequate as a class representative given that the Court does not certify a class

1  concerning Plaintiffs' non-repair tasks claim.

2                    **3.      Rule 23(b)(3) Requirements**

3          Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the

4  parties can be served best by settling their differences in a single action."  Hanlon, 150 F.3d at

5  1022 (quoting 7A Wright & Miller, Federal Practice and Procedure, § 1777 (2d ed. 1986)).

6  Specifically, "when common questions present a significant aspect of the case and they can be

7  resolved for all members of the class in a single adjudication, there is clear justification for

8  handling the dispute on a representative rather than on an individual basis."  Hanlon, 150 F.3d at

9  1022 (quoting 7A Wright & Miller, Federal Practice and Procedure, § 1778 (2d ed. 1986)).

10                        **a.      Predominance**

11         The test for predominance is "whether proposed classes are sufficiently cohesive to

12  warrant adjudication by representation."  Hanlon, 150 F.3d at 1022 (quoting Amchem, 117 S. Ct.

13  at 2249).  Rule 23(b)(3) "focuses on the relationship between the common and individual issues."

14  Hanlon, 150 F.3d at 1022.  Claims need not be identical for common issues of law and fact to

15  predominate, they need only be reasonably co-extensive with those of absent class members.

16  Hanlon, 150 F.3d at 1020.  The predominance issue overlaps with commonality and is satisfied for

17  the same reasons.

18                          **b.      Superiority**

19         Factors affecting superiority include: "(A) the class members' interest in individually

20  controlling the prosecution or defense of separate actions; (B) the extent and nature of any

21  litigation concerning the controversy already begun by or against class members; (C) the

22  desirability or undesirability of concentrating the litigation of the claims in the particular forum;

23  and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).  Certification

24  under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best

25  by settling their differences in a single action."  Hanlon, 150 F.3d at 1022 (quoting 7A Wright &

26  Miller, Federal Practice and Procedure, § 1777 (2d ed. 1986)).  Specifically, "when common

27  questions present a significant aspect of the case and they can be resolved for all members of the

28  class in a single adjudication, there is clear justification for handling the dispute on a

United States District Court
Northern District of California

28

representative rather than on an individual basis."  <u>Hanlon</u>, 150 F.3d at 1022 (quoting 7A Wright & Miller, <u>Federal Practice and Procedure</u>, § 1778 (2d ed. 1986)).

Defendants first argue that the "research model" referenced in the declaration of Stan Mallison is not superior.  (See Mallison Decl. ¶ 5 (noting that his law firm "employs a 'research model' approach to wage and hour class action litigation" that consists of "relying heavily upon technology, investing enormous amounts of time and energy into legal and factual investigations . . . and [] developing comprehensive factual and legal expertise in the specialized areas in which [they] litigate.").)  However, the cited section of this declaration pertains to the adequacy of class counsel, not whether a class action here is superior.  Moreover, the declaration does not propose "unproven statistical sampling" as criticized in <u>Duran v. Bank National Association</u>, 203 Cal. App. 4th 212, 275 (2012).

Defendants also argue that Plaintiffs have failed to show the manageability of a class action for all of their claims in this case.  Indeed, Plaintiffs' papers focus on what they identify as the key claims raised by their complaint, omitting other asserted causes of action entirely.  For example, the issue of uniform deductions raised by Defendants is not addressed by Plaintiffs.  In their reply, Plaintiffs state that although they moved to certify Autovest, Serramonte and M1 subclassses, the court might "find that these proposed subclasses are better managed by further dividing the subclasses or redefining the subclasses along issue lines (i.e. unpaid rest breaks, failure to pay overtime, failure to compensate for non-repair tasks.)"  (Reply at 2 n.1.) Accordingly, because Plaintiffs have only shown that there are common issues with respect to their rest breaks and wage statements claims that render class certification a superior method for adjudicating those claims, the Court only grants Plaintiffs' motion with respect to those claims.

### 4.    FLSA §216(B) Conditional Certification

The FLSA provides a right of action to an employee against his employer when the employer fails to pay overtime wages. See 29 USC §§ 203, 207.  Such an employee may also bring a collective action on behalf of similarly situated employees.  <u>Id.</u> at § 216(b); <u>see also</u> <u>Does v. Advanced Textile Corp.</u>, 214 F.3d 1058, 1064 (9th Cir. 2000); <u>Pfohl v. Farmers Ins. Group</u>, 2004 WL 554834, *2 (C.D. Cal. 2004). Potential plaintiffs must "opt in" to the suit by filing a

written consent with the court.  See § 216(b).  Employees who do not file such written consent are not bound by the outcome and may bring a subsequent action.  Pfohl, 2004 WL 554834 at *2 (citing EEOC v. Pan Am. World Airways, Inc., 897 F.2d 1499, 1508 n. 11 (9th Cir. 1990)).

Determining whether a collective action is appropriate is within the discretion of the district court.  Leuthold v. Destination Am., Inc., 224 F.R.D. 462, 466 (N.D. Cal. 2004) (Walker, J.).  In order to "certify a FLSA collective action, the court must evaluate whether the proposed lead plaintiffs and the proposed collective action group are 'similarly situated' for purposes of § 216(b).  Plaintiffs bear the burden of making this showing." Id.  In determining whether the group is similarly situated, "Courts generally follow one of two approaches: (1) evaluating the FLSA collective action in terms of Rule 23's class certification requirements; or (2) applying a two-step approach involving initial notice to prospective plaintiffs followed by a final evaluation whether such plaintiffs are similarly situated."  Id.  The latter approach has been followed by most courts in this district.  See id. at 467; Newton v. Schwarzenegger, 2010 WL 2280532, at *3 (N.D. Cal. June 7, 2010) (Walker, J.); Mowdy v. Beneto Bulk Transp., 2008 WL 901546, at *2 (N.D. Cal. Mar. 31, 2008) (Patel, J.); Flores v. Velocity Exp., Inc., 2013 WL 2468362, at *5 (N.D. Cal. June 7, 2013) (Tigar, J.).

As discussed above, Defendants' overtime compensation system appears lawful and Plaintiffs' overtime compensation theory would require an individual inquiry into each class members' pay records.  On the other hand, the "initial determination, based primarily on the pleadings and affidavits, is subject to a fairly lenient standard requiring nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  Newton, 2010 WL 2280532, at *3.  Here, Plaintiffs allege that together the FLSA overtime class was victim to an unlawful overtime policy and seven class members have opted-in.[13]  Given the lenient standard under § 216(B), Plaintiffs' allegations are sufficient for conditional certification.

---

[13] Defendants' estimate that this number is 5 is based on *res judicata* arguments rejected above.

## IV.    CONCLUSION

Defendants' motions are DENIED.  Plaintiffs' class certification motion is GRANTED in part and DENIED in part.  The Court certifies the following class, with no subclasses, limited to Plaintiffs' rest break and California Labor Code Section 226 claims:

> All non-exempt piece rate workers who worked at Autovest Collision Repairs, Inc., Serramonte Auto Plaza Auto Body Inc., and M1 Collision Care Centers, Inc. from July 12, 2009 to present.

The Court also conditionally certifies Plaintiffs' FLSA §216(B) opt-in class.  As Plaintiffs have not proposed the contents of the notice that would be sent to potential class members for their opt-in consent, the Parties are ORDERED to meet and confer on this issue and to file a joint letter of no more than four pages attaching the proposed form of the § 216(B) notice within two weeks of this order.

**IT IS SO ORDERED.**

Dated: September 9, 2015

_Elizabeth D. Laporte_
ELIZABETH D. LAPORTE
United States Magistrate Judge

United States District Court
Northern District of California